**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE FUBOTV INC. SECURITIES LITIGATION | Case No. 1:21-cv-01412 (ALC) (JLC)<br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

**MEMORANDUM IN SUPPORT DEFENDANTS' MOTION TO DISMISS**
**<u>AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6)</u>**

**TABLE OF CONTENTS**

**Page**

Introduction.................................................................................................................1

Factual And Procedural Background ..........................................................................2

Legal Standard ...........................................................................................................6

Argument ....................................................................................................................7

      A.    The AC Fails To Plead A Section 10(b) Claim .......................................7

          **1.**    Plaintiff Fails To Plead A Material Misrepresentation Or Omission ..........7

               a.    Plaintiff's Puzzle Pleading Fails To Satisfy The Heightened Pleading Requirements ...................................................................8

               b.    Plaintiff Fails To Plead A Material Fact That Was Omitted .........10

               c.    Plaintiff Fails To Alleged With Any Particularity How Any Omitted "Facts" Rendered Any Statement Misleading .................14

               d.    The Alleged Misstatements Are All Puffery Or Otherwise Not Actionable As Pled ................................................................15

                    (1)    Many Of The Challenged Statements Are Puffery ............16

                    (2)    Many Of The Challenged Statements Are Opinions .........16

                      (3)    Many Of The Challenged Statements Are Forward-Looking Statements Protected By The PSLRA Safe Harbor ...............................................................................17

                    (4)    Many Of The Challenged Statements Are Accurate Statements Of Historical Performance..............................19

          **2.**    Plaintiff Fails To Plead Scienter ...............................................................19

          **3.**    Plaintiff Fails To Plead Loss Causation.....................................................23

      B.    The AC Fails To Plead A Section 20(a) Claim.......................................24

Conclusion ...............................................................................................................25

i

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Acito v. IMCERA Grp.*,
   47 F.3d 47 (2d Cir. 1995) ...................................................................................... 20

*Asher v. Baxter Int'l Inc.*,
   377 F.3d 727 (7th Cir. 2004) ................................................................................. 17

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ...................................................................................... 6

*Barilli v. Sky Solar Holdings, Ltd.*,
   389 F. Supp. 3d 232 (S.D.N.Y. 2019) ................................................................. 3, 4

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) .......................................................................................... 8, 18

*Born v. Quad/Graphics, Inc.*,
   2021 WL 736839 (S.D.N.Y. Feb. 25, 2021) ........................................................... 9

*C.D.T.S. No. 1 v. UBS AG*,
   2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013) ................................................. 10, 19

*Campo v. Sears Holdings Corp.*,
   371 F. App'x. 212 (2d Cir. 2010) .......................................................................... 22

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   750 F.3d 227 (2d Cir. 2014) .................................................................................. 24

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
   543 F. App'x 72 (2d Cir. 2013) ............................................................................. 23

*Delshah Grp. LLC v. Javeri*,
   2013 WL 2322488 (S.D.N.Y. May 28, 2013) ......................................................... 7

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) .............................................................................................. 23

*ECA v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) .................................................................................. 20

*Francisco v. Abengoa, S.A.*,
   481 F. Supp. 3d 179 (S.D.N.Y. 2020) ................................................................... 12

*Frascatore v. Blake,*
    344 F. Supp. 3d 481 (S.D.N.Y. 2018) .................................................................... 2

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011) .................................................................. 22

*Gregory v. ProNAi Therapeutics Inc.*,
    297 F. Supp. 3d 372 (S.D.N.Y. 2018) .................................................................. 16

*In re Alcatel Sec. Litig.*,
    382 F. Supp. 2d 513 (S.D.N.Y. 2005) .................................................................. 10

*In re CRM Holdings, Ltd. Sec. Litig.*,
    2012 WL 1646888 (S.D.N.Y. May 10, 2012) ...................................................... 24

*In re Doral Fin. Corp. Sec. Litig.*,
    563 F. Supp. 2d 461 (S.D.N.Y. 2008), *aff'd sub nom. W. Virginia Inv. Mgmt. Bd. v. Doral Fin.
    Corp.*, 344 F. App'x 717 (2d Cir. 2009)......................................................... 22, 23

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014) ............................................................... 12, 21

*In re Micro Focus Int'l PLC Sec. Litig.*,
    2020 WL 5817275 (S.D.N.Y. Sep. 29, 2020) ...................................................... 16

*In re Nokia Corp. Sec. Litig.*,
    2021 WL 1199030 (S.D.N.Y. Mar. 29, 2021)............................................. 9, 14, 16

*In re Nokia OYJ (Nokia Corp.) Sec. Litig.*,
    423 F. Supp. 2d 364 (S.D.N.Y. 2006) .................................................................. 19

*In re Omnicom Grp., Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010) ................................................................................ 24

*In re Optionable Sec. Litig.*,
    577 F. Supp. 2d 681 (S.D.N.Y. 2008) .................................................................. 12

*In re Solarcity Corp. Sec. Litig.*,
    274 F. Supp. 3d 972 (N.D. Cal. 2017).................................................................. 16

*In re Vivendi Universal S.A. Sec. Litig.*,
    123 F. Supp. 3d 424 (S.D.N.Y. 2015) .................................................................. 24

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016) ............................................................................. 8, 14

*In re Yukos Oil Co. Sec. Litig.*,
    2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006)................................................... 19, 21

iii

*Kalnit v. Eichler*,
 264 F.3d 131 (2d Cir. 2001) ................................................................................... 20

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
 897 F. Supp. 2d 168 (S.D.N.Y. 2012) ..................................................................... 21

*Lau v. Opera Ltd.*,
 2021 WL 964642 (S.D.N.Y. Mar. 13, 2021).................................................... 12, 15

*Lentell v. Merrill Lynch & Co.*,
 396 F.3d 161 (2d Cir. 2005) .............................................................................. 23, 24

*Lipow v. Net 1 UEPS Techs., Inc.*,
 131 F. Supp. 3d 144 (S.D.N.Y. 2015) ..................................................................... 11

*Loginovskaya v. Batratchenko*,
 764 F.3d 266 (2d Cir. 2014) ...................................................................................... 6

*Long Miao v. Fanhua, Inc.*,
 442 F. Supp. 3d 774 (S.D.N.Y. 2020) ..................................................................... 21

*Lucescu v. Zafirovski*,
 2018 WL 1773134 (S.D.N.Y. Apr. 11, 2018) ........................................................... 6

*Matrixx Initiatives, Inc. v. Siracusano*,
 563 U.S. 27 (2011) ..................................................................................................... 7

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
 164 F. Supp. 3d 568 (S.D.N.Y. 2016) ..................................................................... 16

*Meyer v. Greene*,
 710 F.3d 1189 (11th Cir. 2013) ............................................................................... 23

*Novak v. Kasaks*,
 216 F.3d 300 (2d Cir. 2000) .................................................................................... 20

*Olkey v. Hyperion 1999 Term Tr.*,
 98 F.3d 2 (2d Cir. 1996) ..................................................................................... 10, 12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
 575 U.S. 175 (2015) ................................................................................................. 16

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
 694 F. Supp. 2d 287 (S.D.N.Y. 2010) ..................................................................... 21

*Pollio v. MF Glob., Ltd.*,
 608 F. Supp. 2d 564 (S.D.N.Y. 2009) ..................................................................... 19

iv

*Resnik v. Swartz*,
  303 F.3d 147 (2d Cir. 2002) .......................................................................................... 7

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ..................................................................................... 7, 14

*Rosenfeld v. Bronfman*,
  No. 1:23-c-v-01953 (S.D.N.Y. July 28, 2021) ........................................................... 5

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009) ......................................................................................... 19

*Sfiraiala v. Deutsche Bank Aktiengesellschaft*,
  729 F. App'x 55 (2d Cir. 2018) ................................................................................... 6

*Sinay v. CNOOC Ltd.*,
  2013 WL 1890291 (S.D.N.Y. May 6, 2013) .............................................................. 21

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010) ....................................................................................... 18

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA Ltd.*,
  33 F. Supp. 3d 401 (S.D.N.Y. 2014) .......................................................................... 25

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
  547 F.3d 406 (2d Cir. 2008) ......................................................................................... 2

*Steamfitters' Industry Pension Fund v. Endo Int'l PLC*,
  771 F. App'x 494 (2d Cir. 2019) .......................................................................... 8, 10, 13

*Stratte–McClure v. Morgan Stanley*,
  776 F.3d 94 (2d Cir. 2015) ........................................................................................... 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................................................. 2, 19

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016) .................................................................................. 2, 6, 17

*Wyche v. Advanced Drainage Sys.*,
  710 F. App'x 471 (2d Cir. 2017) ................................................................................. 20

## STATUTES

15 U.S.C. § 78u-4(b)(1) ............................................................................................... 1, 7

15 U.S.C. § 78u-4(b)(2) ............................................................................................. 19, 22

15 U.S.C. § 78u-5(c) ....................................................................................................... 18

15 U.S.C. § 78u-5(c)(1)(A)-(B) ................................................................................ 17

15 U.S.C. § 78u-5(c)(1)(A)(i) .................................................................................. 17

15 U.S.C. § 78u-5(i)(1) ............................................................................................ 17

## RULES

Fed. R. Civ. P. 12(b)(6)......................................................................................... 4, 6

Fed. R. Civ. P. 9(b) ....................................................................................... 1, 6, 7, 10

## REGULATIONS

17 C.F.R. § 240.10b-5(b) ........................................................................................... 7

**INTRODUCTION**

Plaintiff's Amended Complaint (the "AC") takes a shotgun approach to pleading securities fraud. It fires blindly, hoping that some pellet of its recitation of nearly every public filing by fuboTV during the Class Period[1] will hit upon an allegation that suggests fraud. But Plaintiff misses entirely, as the AC fails to meet even the most basic pleading requirements, let alone the heightened demands of Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The parallel derivative action—which alleged claims based on the same alleged misstatements and omissions—has already been dismissed with prejudice. So too here; the AC should be dismissed with prejudice.

*First*, for 44 paragraphs, Plaintiff recites portions of fuboTV's public disclosures touting the Company's business model and then tacks on a single paragraph (83) listing five purported "facts" that fuboTV allegedly failed to disclose. Not one of these "facts" is even a "fact"; they are, instead, pessimistic *opinions* about fuboTV that Plaintiff copied from short-seller reports criticizing the Company's business model and predicting doom. The AC does not even attempt to explain how these negative opinions and predictions rendered misleading any statement Defendants made—a fatal pleading flaw for any Section 10(b) claim. 15 U.S.C. § 78u-4(b)(1). In any event, the disclosures that Plaintiff challenges are non-actionable puffery (fuboTV is "well-positioned") or opinions ("We believe there are significant synergies between consumers who enjoy wagering and our subscribers who enjoy streaming live sports"), protected forward-looking statements ("Looking ahead to Q3, with the gradual return of sports, we anticipate an increase in subscribers, viewership and that our portion of revenue derived from advertising will grow"), or

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the AC (Dkt. No. 32).

1

accurate historical financial information ("revenues for the third quarter 2020 were …") that are not actionable as pled.

**Second**, the AC does not create any inference of scienter at all—much less the requisite "strong inference."  Plaintiff was required to allege as to each Defendant particularized facts showing either motive and opportunity to commit fraud or strong circumstantial evidence of conscious misbehavior or recklessness.  Instead, the AC contains improper group-pled allegations that fail to differentiate between the Defendants in any way.  To the extent Plaintiff singles out any Defendant at all, the AC alleges only that one Individual Defendant sold *one percent* of his stock during the Class Period—not surprisingly, courts routinely reject such paltry allegations as insufficient to support scienter.

**Third**, Plaintiff fails to plead loss causation, instead improperly relying solely on the short-seller attacks as alleged corrective disclosures.

The Court should dismiss the AC with prejudice.

### FACTUAL AND PROCEDURAL BACKGROUND

Founded in 2015, fuboTV is a live TV streaming platform for sports, news, and entertainment that offers subscribers an alternative to cable TV by allowing customers to engage with TV and audio through various devices, including TV, mobile phones, and tablets.  AC ¶¶ 29-30; Ex. A at 4.[2]  fuboTV is part of the rapid shift to TV streaming that has "disrupted" the

---

[2] As detailed in Defendants' Request for Judicial Notice In Support of Defendants' Motion to Dismiss, on a motion to dismiss the Court may consider documents incorporated by reference into the AC as well as any matters of which a court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Frascatore v. Blake*, 344 F. Supp. 3d 481, 489 (S.D.N.Y. 2018).  This includes "statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff upon which it relied in bringing the suit." *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (citation omitted).  The Court may also take judicial notice of, among other things, analyst reports, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008), fuboTV's stock price, *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232,

2

traditional cable TV distribution model.  Ex. A at 5.  fuboTV attracts consumers who "come for the sports and stay for the entertainment," and its goal is to build a category-defining service that provides consumers with a technology-driven cable TV replacement.  AC ¶ 60.

In pursuit of that goal, on March 23, 2020, fuboTV announced its merger with the tech-driven IP company FaceBank, positioning fuboTV for global expansion by combining fuboTV's direct-to-consumer live TV streaming platform with FaceBank's IP in sports, movies, and live performances.  AC ¶ 33; Ex. B.  After the merger, fuboTV became a wholly owned subsidiary of FaceBank and FaceBank was renamed fuboTV Inc.  AC ¶ 33.  In October 2020, fuboTV publicly offered 18.3 million common shares for $10 per share.  *Id.* ¶ 59.  In November 2020, fuboTV announced its intentions to expand into the online sports wagering market, which it viewed as complementary to its sports-first live TV streaming platform since a significant portion of sports-focused subscribers would likely be interested in online wagering.  *Id.* ¶ 66.  Then, on December 1, 2020, fuboTV acquired Balto Sports, a company that develops tools for users to organize and play fantasy sports games (the "Balto Acquisition").  *Id.* ¶ 75; Ex. C at 1.

fuboTV's rapid growth as a traditional pay TV disruptor led to what one analyst deemed a tug of war on Wall Street.  Bullish market analysts believed fuboTV sat at the forefront of a trend away from traditional TV viewership and a corresponding shift in TV ad dollars, and were optimistic about fusing fuboTV's sports-streaming service with online sports wagering.  For example, on December 15, 2020, Wedbush initiated coverage setting a price target of $40.  Ex. D at 1.  The stock price reacted positively, increasing from $26.47 to close at $29.70 on December

---

248 n.11 (S.D.N.Y. 2019), and other public documents such as websites, *see Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). All exhibits cited herein are incorporated by reference or fit these judicially noticeable categories.

3

16, 2020.[3]  On December 22, Needham boosted its price target from $30 to $60, citing "strong upside momentum into 2021 owing to . . . FUBO [] taking share from competitors; . . . upside from sports betting" and the expansion of the TV streaming business.  Ex. F at 1.  The stock price increased again in response to this report, closing at $62.00 on December 22, 2020.[4]

But from December 23, 2020 through January 4, 2021, a handful of short sellers and bearish analysts, including *Kerrisdale Report*, *Lightshed Partners*, and *Motley Fool*, very loudly tugged the other way, purporting to "question[]" and "criticize[]" fuboTV's business decisions and attacking fuboTV's "core subscription business [as] 'structurally unprofitable,'" and the Balto Acquisition as "foolish" and a "fantasy."  AC ¶¶ 84-85, 87, 89-90, 96, 100-01, 103-05.  BMO Capital Markets downgraded fuboTV shares to "market perform" from "outperform," *id.* ¶ 85, but increased its 2021 target from $33 to $50.  Ex. G at 1.  Following these short-seller attacks, by January 4, 2021, fuboTV's stock had dropped back to its mid-December price, only to then increase again in a roller-coaster-like battle between the bulls and the bears.  Securities lawsuits predictably followed.

In February 2021, two plaintiffs filed identical securities fraud class actions alleging violations of Sections 10(b) and 20(a) of the Exchange Act based on fuboTV's public statements from March to December 2020.  The Court consolidated the two actions and appointed a new plaintiff as the lead plaintiff ("Plaintiff"), and on July 12, 2021, Plaintiff filed the AC.  The AC alleges in general terms that Defendants "misrepresented Fubo's financial health and its operating condition," and "gave a wholly unrealistic portrayal of [fuboTV's] prospects for entering the online sport wagering business."  AC ¶¶ 3, 8.  The AC then marches through 44 paragraphs of

---

[3] *See* Ex. E at 3; *see also Barilli*, 389 F. Supp. 3d at 248 n.11 (a court may consider publicly available stock prices without converting a Rule 12(b)(6) motion into one for summary judgment).

[4] *See* Ex. E at 2.

excerpted statements from nearly every fuboTV public filing or press release in the nine-month

Class Period, including statements about fuboTV's future plans, goals, and competitive strengths.

*Id.* ¶¶ 39-82. Then, in a single paragraph, the AC alleges that all of the statements (or unidentified

portions of the statements) are false and misleading because the Company allegedly failed to

disclose that: (i) its product offerings would be subject to significant cost escalations; (ii) it could

not successfully compete and perform as a sports book operator and lacked the ability and

resources needed to capitalize on its online sports wagering opportunity; (iii) its data and inventory

was not sufficiently differentiated to achieve its long-term advertising growth goals; (iv) its

valuation was overstated; and (v) it did not possess significant advantages over its peers. *Id.* ¶ 83.

The AC does not match any of these five supposed "facts" to any particular statement, and each of

those "facts" was disclosed, according to Plaintiffs, in the short-seller and bearish analyst reports

published between December 23, 2020 and January 4, 2021. *Id.* ¶¶ 84-106.

On March 3, 2021, a copycat derivative complaint was filed in this Court before Judge

Rakoff—and has since been dismissed with prejudice. Stipulation of Dismissal & Order (Dkt. No.

45) at 3, *Rosenfeld v. Bronfman*, No. 1:23-c-v-01953 (S.D.N.Y. July 28, 2021) ("Derivative Suit").

The derivative complaint mirrored the securities fraud complaints—it verbatim lifted allegations

of misstatements and omissions from the same public filings, alleging state law and an identical

(albeit derivative) 10b-5 claim. Defendants moved to dismiss, arguing among other things that (as

here) the allegations failed to plead the falsity of the challenged statements and omissions, a strong

inference of scienter, and loss causation. Derivative Suit Mem. Law (Dkt. No. 32). Rather than

oppose, plaintiff filed an amended complaint. Defendants again moved to dismiss, Derivative Suit

Mem. Law (Dkt. No. 37), and plaintiff conceded that the claims lacked merit and should be

dismissed. Derivative Suit Joint Motion (Dkt. No. 40) at 3 (plaintiff "concluded that Defendants'

arguments [were] well founded" and "ask[ed] the Court to voluntarily dismiss the suit with prejudice"). fuboTV published a Form 8-K notifying shareholders of the impending dismissal with prejudice, Ex. H, and Judge Rakoff entered an order dismissing the suit with prejudice. *See* Derivative Suit Stipulation of Dismissal & Order (Dkt. No. 45) at 3.

## LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Loginovskaya v. Batratchenko*, 764 F.3d 266, 269-70 (2d Cir. 2014). But a claim cannot withstand a motion to dismiss when the "factual content" of the complaint is not sufficiently plausible to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (citation omitted).

In addition, a complaint alleging securities fraud must satisfy the heightened pleading requirements of the PSLRA and Rule 9(b) by "stating with particularity the circumstances constituting fraud." *Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55, 57 (2d Cir. 2018). To avoid dismissal under Rule 10b-5, "a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007); *see also Lucescu v. Zafirovski*, 2018 WL 1773134, at *6 (S.D.N.Y. Apr. 11, 2018). And a plaintiff must do so with particularity: the PSLRA requires that a plaintiff "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *see also Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) ("To meet the pleading

6

standard of Rule 9(b), this Court has repeatedly required, among other things, that the pleading explain why the statements were fraudulent.").

## ARGUMENT

### A.    The AC Fails To Plead A Section 10(b) Claim

The AC does not plead any particularized facts establishing that any Defendant made any misstatement or omission of a material fact, acted with scienter, or that the alleged fraud caused any losses. Instead, the AC relies on short-sellers' and other third parties' criticisms of fuboTV's business model as the purported cause of stock declines between December 23 2020, and January 4, 2021. But short-seller bets against fuboTV's future prospects do not come close to stating a claim for securities fraud. "The securities laws are not an insurance policy for investments gone wrong, inexperience, bad luck, poor choices, or unexpected market events." *Delshah Grp. LLC v. Javeri*, 2013 WL 2322488, at *1 (S.D.N.Y. May 28, 2013).

#### 1.    Plaintiff Fails To Plead A Material Misrepresentation Or Omission

Plaintiff first fails to plead particularized facts to support a material misstatement or omission. Rule 10b-5 makes it unlawful "[1] [t]o make any untrue statement of a material fact or [2] to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). Section "10(b) and Rule 10b–5(b) do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011); *see also Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002) (no duty to disclose information "simply because it may be relevant or of interest to a reasonable investor"). Rather, "Rule 10b–5 expressly requires an actual statement, one that is either 'untrue' outright or 'misleading' by virtue of what it omits to

7

state." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239 (2d Cir. 2016).[5]   And "to fulfill the materiality requirement there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (internal quotation marks omitted); *see also Steamfitters' Industry Pension Fund v. Endo Int'l PLC*, 771 F. App'x 494, 496 (2d Cir. 2019) (same).

The AC fails to meet this threshold element for four independent reasons: (i) it employs puzzle pleading and therefore is insufficiently particular to state a claim for securities fraud; (ii) the five purportedly omitted facts are not facts at all but instead are conclusory and generalized third-party *opinions* about fuboTV's business model; (iii) Plaintiff does not allege with particularity how any of the statements cut and pasted in the 44 paragraphs are false or misleading; and (iv) to the extent they are identifiable, all of the challenged statements are non-actionable puffery, opinions, forward-looking statements, or historically accurate financial information.

a.    *Plaintiff's Puzzle Pleading Fails To Satisfy The Heightened Pleading Requirements*

The AC should be dismissed in the first instance because it is a prototypical puzzle pleading that courts repeatedly have rejected as insufficient to meet the heavy PSLRA burden.  "Plaintiffs in this circuit have long been on notice that a complaint predominantly 'marked by lengthy block quotes followed by pro forma reasons why the statements quoted are allegedly false . . . fails to state a claim because it is insufficiently particular under the PSLRA.'"  *Born v. Quad/Graphics,*

---

[5] Absent an actual statement, a "pure omission" can be "actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." *Stratte–McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015).  Here, Plaintiff does not allege a "pure omission" theory and therefore was required (but failed) to identify an actual statement that was untrue or misleading with all the rigor required under the PSLRA.

*Inc.*, 2021 WL 736839, at *3 (S.D.N.Y. Feb. 25, 2021) (omission in original) (citation omitted). Such "use of large block quotes . . . followed by generalized explanations of how the statements were false or misleading are not sufficient" to plead a material misstatement or omission. *In re Nokia Corp. Sec. Litig.*, 2021 WL 1199030, at *14 (S.D.N.Y. Mar. 29, 2021) (citation omitted). What Plaintiff has done here is even worse.

Under the heading "Materially False and Misleading Statements Issued During the Class Period," the AC devotes 44 paragraphs to lengthy excerpts from fuboTV's SEC filings and investor calls during the nine-month Class Period. AC ¶¶ 39-82. Some are bolded and italicized. *See, e.g.*, *id.* ¶ 39. Some are not. *See, e.g.*, *id.* ¶ 40. Some are block quoted. *See, e.g.*, *id.* ¶ 43. Some are summarized. *See, e.g.*, *id.* ¶ 46. And it is not until paragraph 83 that the AC—for the first time—alleges that the "[t]he above statements"—including ten additional "Background" paragraphs, *id.* ¶¶ 29-38—were false and misleading because they "failed to disclose material adverse facts about the Company's business, operational, and compliance polices." *Id.* ¶ 83. Plaintiff then lists five "adverse facts" that Defendants allegedly failed to disclose. AC ¶ 83. And that's it. It is entirely unclear *what* specific statements are alleged to be false or misleading, or *why* they are false and misleading. Indeed, despite having already amended his complaint, Plaintiff makes no effort to connect any of the five alleged "facts" with any of the statements recited throughout Plaintiff's 44 paragraphs, let alone do so with particularity.

Plaintiff's puzzle pleading is alone grounds for dismissal. His "reference to these assertions as 'facts' does nothing to transform generalized statements into particularized allegations." *Born*, 2021 WL 736839, at *4 (complaint containing 69 paragraphs of excerpted statements from nearly every public disclosure document and related investor call during the class period, followed by the repetition of "the same five or so generalized conclusory statements" failed

9

to explain why any particular statement was false or misleading as required by Rule 9(b) and the PSLRA). And it fails to identify "which statements link up with which issues in the laundry list" of omitted "facts." *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 534 (S.D.N.Y. 2005). It was Plaintiff's burden, not the Court's, "to sort out the alleged misrepresentations and then match them with the corresponding adverse facts." *Id.*

### b.    *Plaintiff Fails To Plead A Material Fact That Was Omitted*

Beyond the puzzle pleading, the AC fails to state a claim because Plaintiff does not identify any material *fact* that was *omitted*, as required to state a 10b-5 claim. The crux of Plaintiff's theory is that fuboTV failed to disclose the five "adverse facts" listed in paragraph 83 of the AC. But those five "facts" are not facts at all—much less material facts rendering a particular statement misleading, *Steamfitters,* 771 F. App'x at 496—and, if anything, these "facts" only identify potential risks that fuboTV specifically disclosed, *Olkey v. Hyperion 1999 Term Tr.*, 98 F.3d 2, 5 (2d Cir. 1996).

***First***, the five "facts" are nothing more than short-seller and bearish analyst *opinions* criticizing fuboTV's business strategy and future prospects. Plaintiff has not alleged securities fraud at all, but rather has simply parroted one side of competing market opinions about fuboTV's business and speculation as to whether fuboTV's strategy of moving into online sports wagering would be successful. In mid-December, one analyst (Wedbush) published positive predictions about fuboTV and the stock price rose. *See* Exs. D, E. Eight days later, bearish analysts and short-sellers responded by issuing negative opinions that drove the stock price down. *See* AC ¶¶ 84-106. Plaintiff then copied those later negative reports into the AC. *See id.* But competing views about a company plainly do not amount to securities fraud. *See C.D.T.S. No. 1 v. UBS AG*, 2013 WL 6576031, at *4 (S.D.N.Y. Dec. 13, 2013) (media reports "criticizing UBS's risk controls" did not support falsity); *Lipow v. Net 1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 170 (S.D.N.Y. 2015)

10

(internal citations omitted) (company not required to "disclose what would have been pure speculation"). Indeed, even a cursory look at Plaintiff's five supposed "facts" shows they are pulled from the bearish analyst and short-seller reports making negative predictions about fuboTV's business model:

i. **"Fubo's offering of products would be subject to significant cost escalation"** is lifted directly from the *Kerrisdale Report*'s claim that "Fubo's core subscription business was 'structurally unprofitable,' due to 'high variable content costs with contracted escalators.'" *id.* ¶ 90; Ex. I at 3, 14. It's not an objective fact, it's a bearish prediction about fuboTV's future profitability.

ii. **"Fubo could not successfully compete and perform as a sports book operator and lacked the ability and resources needed to capitalize on its online sports wagering opportunity"** parrots *Lightshed Partners*, which "called the prospects of Fubo achieving success with sports betting a 'fantasy,'" AC ¶ 84; Ex. J at 5, as well as the *Kerrisdale Report*'s opinions that the Balto Acquisition was a "'foolish' attempt to enter the 'already highly competitive space [of sport wagering].'" AC ¶ 100; Ex. I at 3. Again, this is not a fact, it's a negative prediction that one of fuboTV's business strategies would be unsuccessful.

iii. **"Fubo's data and inventory was not differentiated to allow Fubo to achieve its long-term advertising growth goals"** is drawn directly from the *Kerrisdale Report*'s claim that fuboTV "does not have any data or inventory that is differentiated and cannot provide the reach many advertisers crave," *id.* ¶ 96; Ex. I at 3. It is unclear what "data and inventory" not being "differentiated" even means, but regardless, it at most expresses an opinion and a negative prediction about fuboTV's ability to achieve its goals, not any objective fact.

iv. **"Fubo's valuation was substantially overstated in light of its total revenue and subscription levels"** mimics *Lightshed Partners*' opinion that fuboTV "'[may be] the most compelling short we have ever identified in our career as analysts'" and BMO Capital Markets' claim that "Fubo's 'valuation had gotten overheated.'" *Id.* ¶ 84-85; Ex. J at 1. Tellingly, Plaintiff does not allege that *Defendants* made any false or misleading statements about fuboTV's valuation. AC ¶¶ 8, 11, 82, 110, 112, 136 (alleging that securities analysts raised price targets and changed their valuations). *Others'* subjective valuations of fuboTV cannot be facts that *Defendants* omitted. And regardless, this too is a negative opinion about fuboTV's valuation.

v. **"Fubo did not possess significant advantages over its peers as it publicly touted"** mirrors the *Kerrisdale Report*'s criticism that fuboTV has "various competitive disadvantages versus the likes of Google and Hulu," Ex. I at 19 ("Fubo is no different from every other distributor in the world and Hulu+ Live, DTV,

11

Comcast, and Charter – all reach many millions more homes."), and *Lightshed Partners'* opinion that "Fubo is simply just another [vMVPD] facing the same obstacles and financial challenges as every other vMVPD," Ex. K at 2.  At most this represents a bearish opinion about fuboTV's business model.

Plaintiff attempts to shore up his repetition of short-seller reports with scattered allegations from confidential witnesses ("CWs"), but this does nothing to show that the supposedly omitted "facts" were "facts," rather than negative opinions, or that they rendered any statement misleading. Indeed, two of the CWs (1 and 3) left the Company *before* the Class Period.  "[C]ourts have rejected confidential witness allegations where the confidential witnesses 'left the company before the class period.'" *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 208 (S.D.N.Y. 2020) (internal citations omitted).  Given that they left the Company before Defendants allegedly made any misstatements, these CWs have no information that could support an inference of "contemporaneous falsity—that the makers of the statements . . . knew their statements were false or misleading *at the time they were made*." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 580 (S.D.N.Y. 2014) ("without *contemporaneous* falsity, there can be no fraud").  Their allegations are "not sufficient" to support falsity. *In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 691 (S.D.N.Y. 2008).  And CW 2, the only CW employed during the Class Period, made just one allegation:  that Hulu and YouTube TV were "considered Fubo's peers in the vMVPD sector."  AC ¶ 107.  But this "fact" does not contradict any of the challenged statements—and fuboTV disclosed it anyway (*see* Ex. L at 14), thereby negating any alleged falsity.  *See Lau v. Opera Ltd.*, 2021 WL 964642, *7 (S.D.N.Y. Mar. 13, 2021) (no liability for failing to disclose a "fact readily accessible in the public domain").

*Second*, if anything, Plaintiff's five "facts" are speculation about the risks facing fuboTV—yet the Company expressly "warn[ed] investors of exactly the risks the plaintiff[] claim[s] was not disclosed." *Olkey*, 98 F.3d at 5.  For example:

12

| "Adverse Facts"[6] | fuboTV's Warning/Disclosure |
|---|---|
| "(i) Fubo's offering of products would be subject to significant cost escalation" | fuboTV disclosed in its October 5, 2020 S-1A, "Given the multiple-year duration and sometimes fixed cost nature of content commitments, if subscriber acquisition and retention do not meet our expectations, our margins may be adversely impacted, and we may not be in a position to make the minimum guarantee payments required under certain content licenses." Ex. L at 13. |
| "(ii) Fubo could not successfully compete and perform as a sports book operator and lacked the ability and resources needed to capitalize on its online sports wagering opportunity" | During the BMO Capital Markets 2020 Growth & ESG Conference, fuboTV stated that "no one should think of us as a . . . wagering company," AC ¶ 79, and in a November 10, 2020 letter to shareholders, fuboTV disclosed "risks related to our ability to successfully develop and market a sports wagering offering." Ex. M at 9. |
| "(iii) Fubo's data and inventory was not differentiated to allow Fubo to achieve its long-term advertising growth goals" | fuboTV disclosed in its S-1A, "Likewise, our system for predicting subscriber content preferences is based on advanced data analytics systems and our proprietary algorithms. We have invested, and will continue to invest, significant resources in refining these technologies; however, we cannot assure you that such investments will yield an attractive return or that such refinements will be effective. The effectiveness of our ability to predict subscriber content preferences depends in part on our ability to gather and effectively analyze large amounts of subscriber data. Our ability to predict content that our subscribers enjoy is critical to the perceived value of our platform among subscribers and failure to make accurate predictions could materially adversely affect our ability to adequately attract and retain subscribers and sell advertising to meet investor expectations for growth or to generate revenue." Ex. L at 26. |

---

[6] Plaintiff additionally alleges that fuboTV omitted that *others'* valuations of fuboTV were "overstated," (AC ¶ 83) but as explained above, *others'* subjective valuations of fuboTV cannot be facts that *Defendants* omitted or could have or should have warned about.

| | |
|---|---|
| "(v) Fubo did not possess significant advantages over its peers as it publicly touted" | fuboTV disclosed in its S-1A, "TV streaming is highly competitive and many companies, including large technology and entertainment companies, TV brands, and service operators, are actively focusing on this industry. If we fail to differentiate ourselves and compete successfully with these companies, it will be difficult for us to attract or retain subscribers and our business will be harmed." Ex. L at 4. |

Plaintiff failed to plead the requisite omission of a material fact, *Steamfitters,* 771 F. App'x at 496, and the AC should be dismissed on this ground alone.

     c.    *Plaintiff Fails To Alleged With Any Particularity How Any Omitted "Facts" Rendered Any Statement Misleading*

Not only does Plaintiff fail to identify a material fact that was omitted, but Plaintiff also fails to connect any purportedly omitted "fact" to a particular statement or explain why that particular statement was materially misleading. *See In re Vivendi S.A.*, 838 F.3d at 239 ("Rule 10b–5 expressly requires an actual statement, one that is either 'untrue' outright or 'misleading' by virtue of what it omits to state."); *Nokia*, 2021 WL 1199030, at *13 ("To satisfy the particularity requirement, a complaint must . . . 'explain why the statements (or omissions) are fraudulent.'").

For the most part, as explained above, Plaintiff improperly excerpts dozens of fuboTV's public statements, and then lists five allegedly omitted "facts," leaving the Court and Defendants to guess as to which statements actually are being challenged, and why those statements were false or misleading without the five "facts." *See supra* Section A.1.a.; *Rombach*, 355 F.3d at 174 (plaintiff "must do more" than allege a statement is false or misleading in a conclusory fashion— he "must demonstrate with specificity why and how that is so"). In the few instances where Plaintiff does try to connect a particular challenged statement with an omitted "fact," Plaintiff fails to do so with particularity, and in any event, the omitted "facts" were consistent with what fuboTV said and was publicly known. This pleading failure also warrants dismissal.

For example, Plaintiff claims that the Company's December 1, 2020 Balto Acquisition

14

announcement was misleading because (1) fuboTV had previously announced a partnership with FanDuel; and (2) Balto Sports had an inactive website and three employees, *id.* ¶¶ 80-81, 100. But Plaintiff does not (and cannot) dispute that the Balto Acquisition was fuboTV's first acquisition to support its online sports wagering strategy. Likewise, all of Plaintiffs' "omitted" facts—including the number of Balto employees—were publicly known,[7] and therefore cannot form the basis of a securities fraud claim. *See, e.g., Lau*, 2021 WL 964642 at *7.

In addition, in a section of the AC titled "The Truth Begins to Emerge," AC ¶ 84—rather than the section containing the purported challenged statements, AC ¶¶ 39-82—Plaintiff appears to assert that other statements in fuboTV's July 8, 2020 shareholder letter and its 2019 Annual Report were misleading, but again fails to connect the dots. Plaintiff alleges that fuboTV misstated its "competitive strength" in the July 8 letter because it failed to disclose its subscription cost was "on par" with two competitors. AC ¶¶ 107-09. But the July 8 letter does not address subscription costs, which were publicly known facts. As to the 2019 Annual Report's statement that "the Company is 'increasingly leveraging our data and analytics capabilities to optimize advertisements," Plaintiff does not (and cannot) allege the Company was *not* doing so. Plaintiff's assertion that fuboTV "did not have the capability to track lucrative 'user data,'" *id.*, is based on CW 1's allegations, yet as noted above, CW 1 was not at the Company at the time of the 2019 Annual Report.

> d.      *The Alleged Misstatements Are All Puffery Or Otherwise Not Actionable As Pled*

In any event, all of the challenged statements independently should be dismissed because they constitute non-actionable puffery or opinion statements, protected forward-looking

---

[7] *See* AC ¶ 81 (citing public websites, including Balto Sports' own website); *see also* Ex. N (disclosing Balto Sports has three founders and two employees).

statements, and/or accurate descriptions of fuboTV's performance that are not actionable as pled.

(1)     <u>Many Of The Challenged Statements Are Puffery</u>

Many of the challenged statements—*e.g.*, that fuboTV was "well positioned," had a "significant advantage," "competitive strength," and "solid growth," and believed in the synergies of the FaceBank merger and Balto Acquisition (AC ¶¶ 39, 48, 61, 65, 70, 71, 107-09)—are nearly identical to those courts have dismissed as non-actionable "'puffery' *i.e.*, 'optimistic statement[s] that [are] so vague, broad, and non-specific that a reasonable investor would not rely on [them],'" *Nokia*, 2021 WL 1199030, at *17; *see, e.g.*, *In re Micro Focus Int'l PLC Sec. Litig.*, 2020 WL 5817275, at *11 (S.D.N.Y. Sep. 29, 2020) ("well-positioned"); *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 398-99 (S.D.N.Y. 2018) ("competitive advantage"); *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 994-95 (N.D. Cal. 2017) ("strong growth"); *Nokia*, 2021 WL 1199030, at *17 ("[S]tatements touting the progress of the integration as 'complete' and 'successful' or that the cultural integration 'went beautifully'"); *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 580 (S.D.N.Y. 2016) ("competitive strength").  In fact, several challenged statements explicitly reference fuboTV's optimism. *See, e.g.*, AC ¶ 65 ("Our optimism in the future of fuboTV and the live TV streaming business has never been stronger."); *id.* ¶ 71 ("[T]here are a great many reasons for us to be optimistic given the optionality in the business.").

(2)     <u>Many Of The Challenged Statements Are Opinions</u>

Numerous of the challenged statements are also non-actionable opinions about fuboTV's market position and competitive strengths—many of which included the qualifier "we believe." *See, e.g.*, AC ¶¶ 48 ("We believe fuboTV is at the forefront of the streaming revolution and has a significant advantage not only over peers in the vMVPD space but also over traditional cable television."), 57, 62, 65-66, 75.  Opinions are actionable only if the speaker (1) did not actually hold the professed belief; (2) supplied "untrue" facts supporting the belief; or (3) failed to disclose

16

"material facts" about his "inquiry into or knowledge concerning" the opinion that "conflict with what a reasonable investor would take from the statement itself." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86, 189 (2015). This is "no small task" to plead (*id*. at 194), and Plaintiff has not done so. Plaintiff offers only contrary opinions, rather than any particularized allegations about how these opinion statements were false at all (*see supra* Section A.1.b), much less a single allegation that Defendants believed they were false when made. *Tongue*, 816 F.3d at 212 (*Omnicare* "does not impose liability" where "Plaintiffs' case essentially boils down to an allegation that the statements were misleading for failure to include a fact that would have potentially undermined Defendants' optimistic projections").

(3)     Many Of The Challenged Statements Are Forward-Looking Statements Protected By The PSLRA Safe Harbor

Plaintiff also challenges statements about fuboTV's future plans and projections, *see*, *e.g.*, AC ¶¶ 39, 45, 66, 73, 75, 81, that fall squarely within the PSLRA's definition of forward-looking statements. *See* 15 U.S.C. § 78u-5(i)(1) (forward-looking statements are projections of (1) revenues and other financial metrics; (2) plans and objectives of management for future operations, including those relating to the products or services of the issuer; (3) future economic performance; and (4) assumptions underlying or relating to such statements). A forward-looking statement is protected by the PSLRA's safe harbor if *either* (1) it was accompanied by meaningful cautionary language, *or* (2) plaintiff fails to allege the maker of the statement had actual knowledge that the statement was false or misleading. *Id.* § 78u-5(c)(1)(A)-(B). fuboTV's statements are protected under both prongs.

First, fuboTV's forward-looking statements were accompanied by meaningful cautionary language that "identif[ied] important factors that could cause actual results to differ materially

17

from those in the forward-looking statement."  15 U.S.C. § 78u-5(c)(1)(A)(i).[8]  For example, in the March 23, 2020 press release announcing the FaceBank merger, fuboTV warned that "[a]ctual results or events could differ materially" due to "risks related to the ability to realize the anticipated benefits of the transaction, including the risk that the businesses will not be integrated successfully, [] the effect of the announcement or pendency of the transaction on FaceBank's business relationships, operating results and business generally, [] risks that the proposed transaction disrupts current plans and operations . . . ."  Ex. B at 3.  Similarly, in fuboTV's November 10, 2020 letter announcing the planned expansion into sports wagering, fuboTV cautioned that "[a]ctual results or events could differ materially" due to "risks related to our ability to successfully develop and market a sports wagering offering." Ex. M at 9; *see also* AC ¶ 79 ("no one should think of us as a . . . wagering company,"); Ex. O at 4 ("These forward-looking statements are subject to certain risks . . . including those related to FUBO's growth, evolution of our industry, product development and success, including with respect to online wagering. . . ."); Ex. C at 2 ("[a]lthough fuboTV believes the expectations reflected in such forward-looking statements are reasonable, fuboTV can give no assurance that such expectations will prove to be correct" and directing readers to prior risk warnings).  These warnings were "not boiler plate and conveyed substantive information," protecting these statements under the PSLRA's safe harbor.  *Slayton v. Am. Express Co.*, 604 F.3d 758, 722 (2d Cir. 2010).

Additionally, Plaintiff has not alleged any particularized facts establishing that any

---

[8] Because Plaintiff relies on the fraud-on-the-market theory (*see* AC ¶ 128), every forward-looking statement was "accompanied by" all of the public cautionary language at the time of the statement. *See Asher v. Baxter Int'l Inc.,* 377 F.3d 727, 732 (7th Cir. 2004) ("[T]he market for Baxter's stock is efficient, which means that Baxter's cautionary language must be treated as if attached to every one of its oral and written statements."); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988) ("the market price of shares traded on well-developed markets reflects all publicly available information . . . .")

Defendant made any statement with *scienter*—much less facts meeting the "stricter" requirement of "knowing falsity," *id*.; 15 U.S.C. § 78u-5(c),(i); *see infra* Section A.2.  On the contrary, Plaintiff does not allege that *any* Defendant had "actual knowledge" of wrongdoing.

(4)    <u>Many Of The Challenged Statements Are Accurate<br>Statements Of Historical Performance</u>

Plaintiff also challenges statements containing accurate historical financial information, including, for example, total customer viewing hours year-over-year, growth in subscribers, drop in per-subscriber costs, and improvement in advertiser conversions, revenue and other financial metrics.  *See, e.g.*, AC ¶¶ 40-41, 43, 49, 54, 57, 67, 70.  Plaintiff does not allege any facts suggesting these reports were inaccurate.  "It is well-established . . . that defendants may not be held liable under the securities laws for accurate reports of past successes."  *Pollio v. MF Glob., Ltd*., 608 F. Supp. 2d 564, 571 (S.D.N.Y. 2009); *In re Nokia OYJ (Nokia Corp.) Sec. Litig*., 423 F. Supp. 2d 364, 393 (S.D.N.Y. 2006) ("[I]t is well settled that a complaint alleging violations of the securities laws may not rely upon statements that are true.").

2.    <u>Plaintiff Fails To Plead Scienter</u>

The AC should be dismissed for the independent reason that Plaintiff fails to establish the requisite "strong inference" of scienter—*i.e.*, an "intent to deceive, manipulate, or defraud"—as to *each* Defendant and *each* alleged misstatement.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007); 15 U.S.C. § 78u-4(b)(2).  "To meet the 'strong inference' standard, it is *not* sufficient to set out 'facts from which, if true, a reasonable person *could* infer that the defendant acted with the required intent,' for that gauge 'does not capture the stricter demand Congress sought to convey . . . .'"  *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110-11 (2d Cir. 2009) (citing *Tellabs,* 551 U.S. at 314) (emphasis added).  Additionally, where a complaint names multiple defendants, "[s]cienter must be separately pled and individually supportable as to each

19

defendant." *C.D.T.S. No. 1*, 2013 WL 6576031, at *6.  A plaintiff cannot rely on "generalized group pleading" that fails "to differentiate in any way" between the defendants' knowledge.  *In re Yukos Oil Co.*, 2006 WL 3026024, at *20 ("allegations concerning [one defendant's] knowledge . . . fail to differentiate in any way between [the defendants]" and thus are improper "generalized group pleading").  Rather, a plaintiff must allege as to each defendant particularized facts showing either (i) "motive and opportunity to commit fraud;" or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness."  *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  The AC fails to do either.

Plaintiff first fails to plead motive or opportunity.  "In order to raise a strong inference of scienter through motive and opportunity to defraud, Plaintiff[] must allege that [the Defendants] benefitted in some concrete and personal way from the purported fraud."  *Id.*  Plaintiff does not do this.  He does not even allege that Messrs. Bronfman or Nardi possessed motive or opportunity to commit fraud.  And Plaintiff's only motive allegation against Mr. Gandler is that he sold 26 fuboTV shares (1% of his stock) during the Class Period (AC ¶ 116).  This paltry allegation fails as Plaintiff does not allege anything "unusual" about this single trade, and it is too small to suggest scienter.  *See Wyche v. Advanced Drainage Sys.*, 710 F. App'x 471, 473 (2d Cir. 2017) (sales not unusual because "the percentage of shares sold was small, the timing was not suspicious, and no other insiders were alleged to have sold stock"); *Acito v. IMCERA Grp.*, 47 F.3d 47, 54 (2d Cir. 1995) (concluding an insider's sale of less than 11% of his holdings did not support an inference of bad faith and scienter).

Where, as here, Plaintiff fails to establish motive, his allegations regarding conscious misbehavior or recklessness as to each Defendant "must be correspondingly greater."  *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).  But Plaintiff fails to plead either conscious misbehavior

20

or recklessness as to any Defendant.  To plead conscious misbehavior or recklessness, Plaintiff must allege with particularity that each Defendant either engaged in (i) "deliberate illegal behavior," *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000), or (ii) conduct that was "highly unreasonable and [] represent[ed] an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it," *Sinay v. CNOOC Ltd.*, 2013 WL 1890291, at *7 (S.D.N.Y. May 6, 2013).  Plaintiff comes nowhere close to meeting this heavy burden.

Plaintiff generically alleges that "Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading" because of their "receipt of information" and their "associations with the Company which made them privy to confidential proprietary information concerning Fubo."  AC ¶¶ 135-138.  Such "[a]n allegation that a defendant merely ought to have known is not sufficient." *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 184 (S.D.N.Y. 2012).  Courts routinely reject arguments that defendants must have known their public statements were misleading "because they held management roles" or had "access to information."  *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce,* 694 F. Supp. 2d 287, 298 (S.D.N.Y. 2010) ("[A]ccusations founded on nothing more than a defendant's corporate position are entitled to no weight."); *In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024, at *20 (S.D.N.Y. Oct. 25, 2006) (allegations that defendants had "access to information are insufficient as a matter of law to establish . . . conscious misbehavior or recklessness").  Nor does Plaintiff's passing allegation that Defendants signed SEC filings suffice.  *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 807 (S.D.N.Y. 2020) (no scienter "based on the signing of a certification without alleging any facts to show a concomitant awareness of or recklessness to the materially misleading

21

nature of the statements'"). All of these boilerplate assertions fail because they do not show that Defendants possessed contemporaneous information that contradicted the challenged statements. *See Lululemon*, 14 F. Supp. 3d at 580, 586 (holding that complaint did not allege scienter where it lacked "specific factual allegations" suggesting "if, when, or how . . . any of the makers of the statements knew" any contrary information).[9]

The CW allegations also fail to support a strong inference of scienter. CW 1 notes that Mr. Gandler was "hands-on," "attended meetings," and "involve[d] in the day-to-day affairs of the Company," AC ¶ 140, but fails to allege what supposedly contradictory information Mr. Gandler learned at these meetings or through his involvement. Similarly, CWs 2 and 3 make observations that Mr. Gandler allegedly made a statement that fuboTV was "on the path toward profitability" and "sometimes went into details about new packages Fubo had introduced." *Id*. ¶ 141. But these observations are *consistent* with Mr. Gandler's optimistic statements about the Company's future, and Plaintiff offers no explanation otherwise. None of these allegations show that Mr. Gandler had any information "highlighting the falsity of public statements." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011).

In any event, Plaintiff provides none of the detail—*i.e.*, who communicated the information, when it was communicated, how it was communicated—required by courts to credit such allegations for scienter purposes. *See Campo v. Sears Holdings Corp.*, 371 F. App'x. 212, 217 (2d Cir. 2010) (confidential witness allegations that executives had access to certain reports

---

[9] Nor does an unrelated insider trading charge against Mr. Bronfman from over a decade ago support a strong inference of scienter. AC ¶ 142. It does not even relate to fuboTV, let alone (1) the fuboTV statements at issue in this case, or (2) Mr. Bronfman's awareness that any of those statements were false. 15 U.S.C. § 78u–4(b)(2) ("The complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.").

were insufficient to plead scienter when the witness "had no knowledge of whether [individual defendants] actually accessed or reviewed the reports"); *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (allegation that CW attended meetings during which certain reports were discussed was "so vague as to be meaningless, because it contains no time frame within which the meetings occurred, . . . and no information regarding how extensively or in what manner the reports were discussed"), *aff'd sub nom. W. Virginia Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717 (2d Cir. 2009).

### 3.     Plaintiff Fails To Plead Loss Causation

Plaintiff also has not adequately pled loss causation—the "causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (citation omitted).  Specifically, Plaintiff has not alleged a "corrective" disclosure of a previously concealed "truth" that caused fuboTV's stock price to decline.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43, 347 (2005).  The AC is nothing more than an attempt to insure against losses driven by short-seller reporting that drove the stock price down for a brief time period, before it bounced back up.  Indeed, given the tug of war between the bears and the bulls, which drove the stock price quickly up and quickly down, the bulk of the class did not suffer any losses at all because they purchased before the stock price started its rapid climb from December 15 to December 22, 2020.

Plaintiff claims that a handful of short-seller and analyst reports published on and after December 23, 2020 corrected the challenged statements.  AC ¶¶ 84-106.  But these reports solely represented the authors' sensationalized (and self-interested) opinions.  *See supra* Section A.1.b.  These "opinion[s], standing alone, cannot 'reveal to the market the falsity' of a company's prior factual representations."  *Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d

23

Cir. 2013) (third-party's negative opinions "are not 'corrective' for the purpose of pleading loss causation"). BMO Capital Markets' downgrade of fuboTV's stock (AC ¶ 85) similarly does not constitute a corrective disclosure. *See Lentell*, 396 F.3d at 175 & n.4 (downgrades of stock do not reveal falsity of the prior recommendations). Plaintiff "cannot establish loss causation merely by relying on an after-the-fact 'negative characterization of already-public information.'" *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *31 (S.D.N.Y. May 10, 2012) (citation omitted); *see also In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) ("negative characterization of already-public information" is not corrective).

In addition, even if Plaintiff identified corrective disclosures—and he has not—the number of class members who actually suffered actionable losses would be incredibly limited as anyone who purchased fuboTV stock from March 23, 2020 through November 20, 2020 purchased at a price *lower than* the lowest trading price during the 90-day PSLRA bounce-back period. *See* Ex. E. That means the bulk of the purchasers in the class would have realized a *gain*, not a loss, on any fuboTV stock sale. *In re Vivendi Universal S.A. Sec. Litig.*, 123 F. Supp. 3d 424, 439 (S.D.N.Y. 2015) ("[t]o be sure, 'if the mean trading price of a security during the [bounce back period] is greater than the price at which the plaintiff purchased his stock[,] then that plaintiff would recover nothing'").

## B.      The AC Fails To Plead A Section 20(a) Claim

An actionable Section 20(a) claim requires a primary violation, control of the primary violator, and culpable participation in the controlled person's fraud. *See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014). Here, Plaintiff fails to plead the Individual Defendants' liability under Section 20(a). *First*, Plaintiff's Section 20(a) claims all fail because the AC does not plead a single primary violation. *See supra* Section A. *Second*, Plaintiff fails to plead any particularized facts showing Messrs. Gandler, Bronfman, or Nardi's

24

"culpable participation"—*i.e.*, particularized facts indicating that each of Messrs. Gandler, Bronfman, and Nardi "knew or should have known that the primary violator [here, fuboTV], over whom that person had control, was engaging in fraudulent conduct." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA Ltd.*, 33 F. Supp. 3d 401, 438-39 (S.D.N.Y. 2014).

## CONCLUSION

For the reasons stated, the AC should be dismissed with prejudice.

Dated: September 10, 2021
       New York, NY

Respectfully Submitted,

**LATHAM & WATKINS LLP**

/s/ Andrew B. Clubok
Andrew B. Clubok
Susan E. Engel
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: andrew.clubok@lw.com
        susan.engel@lw.com

Nicholas J. Siciliano (*pro hac vice*)
Kathryn K. George (*pro hac vice*)
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
Email: nicholas.siciliano@lw.com
        kathryn.george@lw.com

*Attorneys for Defendants*

25