**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FUBOTV, INC. SECURITIES LITIGATION | Case No. 1:21-cv-01412 (ALC) (JLC) <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**
**AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT.......................................................................................................................1

      A.      Plaintiff Does Not Meaningfully Dispute That The AC Is A Puzzle
              Pleading...................................................................................................................1

      B.      The AC Fails To Identify Any False Or Misleading Statements Or
              Omissions.................................................................................................................2

      C.      The Alleged Misstatements Are Puffery Or Otherwise Not Actionable .................5

      D.      Plaintiff Fails To Plead Scienter ............................................................................8

      E.      Plaintiff Fails To Plead Loss Causation.................................................................10

CONCLUSION.................................................................................................................10

i

## TABLE OF AUTHORITIES

**Page**

### CASES

*City of Pontiac Gen. Empls. Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012) ...................................................................... 10

*Constr. Laborers Pension Tr. for S. California v. CBS Corp.*,
433 F. Supp. 3d 515 (S.D.N.Y. 2020) ....................................................................... 2

*Cox v. Blackberry Ltd.*,
660 F. App'x 23 (2d Cir. 2016) ................................................................................. 9

*Das v. Rio Tinto PLC*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018) ....................................................................... 9

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................................. 10

*ECA v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) ..................................................................................... 8

*Empls. Ret. Sys. v. Blanford,*
794 F.3d 297 (2d Cir. 2015) ..................................................................................... 4

*Francisco v. Abengoa S.A.*,
481 F. Supp. 3d 179 (S.D.N.Y. 2020) ...................................................................... 4

*Galestan v. OneMain Holdings, Inc.*,
348 F. Supp. 3d 282 (S.D.N.Y. 2018) ...................................................................... 5

*In re Comput. Assoc. Class Action Sec. Litig.*,
75 F. Supp. 2d 68 (E.D.N.Y. 1999) .......................................................................... 5

*In re Ford Fusion & C-MAX Fuel Econ. Litig.*,
2017 WL 3142078 (S.D.N.Y. July 24, 2017) ........................................................... 5

*In re Micro Focus Int'l Plc Sec. Litig.*,
2020 WL 5817275 (S.D.N.Y. Sept. 29, 2020) .......................................................... 3

*In re OSG Sec. Litig.*,
971 F. Supp. 2d 387 (S.D.N.Y. 2013) ...................................................................... 8

*In re Pareteum Sec. Litig.*,
2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021) ........................................................... 9

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001) ........................................................................ 4

*In re Supercom Inc., Sec. Litig*,
  2018 WL 4926442 (S.D.N.Y. Sept. 10, 2018) ........................................... 10

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ............................................. 8

*In re UBS AG Sec. Litig.*,
  2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) .................................... 1, 5, 8

*Iowa Pub. Emps. Ret. Sys. v. MF Global, Ltd.*,
  620 F.3d 137 (2d Cir. 2010) ........................................................................ 4

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) ........................................................................ 9

*Long Miao v. Fanhua, Inc.*,
  442 F. Supp. 3d 774 (S.D.N.Y. 2020) .......................................................... 4

*Manavazian v. Atec Grp.*,
  160 F. Supp. 2d 468 (E.D.N.Y. 2001) .......................................................... 5

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
  300 F. Supp. 3d 551 (S.D.N.Y. 2018) .......................................................... 5

*Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron Inc.*,
  741 F. Supp. 2d 474 (S.D.N.Y. 2010) .......................................................... 5

*S.E.C. v. Fiore*,
  416 F. Supp. 3d 306 (S.D.N.Y. 2019) .......................................................... 9

*Singh v. Schikan*,
  106 F. Supp. 3d 439 (S.D.N.Y. 2015) .......................................................... 2

*Villare v. Abiomed, Inc.*,
  2021 WL 4311749, (S.D.N.Y. Sept. 21, 2021) ............................................ 6

## STATUTES

15 U.S.C. § 78u-5(c)(1)(A) .................................................................................... 6

15 U.S.C. § 78u-5(c)(1)(B) .................................................................................... 6

15 U.S.C. § 78u-5(i)(1) .......................................................................................... 6

**INTRODUCTION**

Plaintiff does not meaningfully respond to any of Defendants' arguments. Instead, he doubles down on his claim that Defendants were somehow required to disclose short-sellers' negative *predictions* that fuboTV's business model was not sustainable. But Plaintiff is relying on short-sellers' speculation about fuboTV's ability to compete, without ever identifying any *facts* that Defendants supposedly failed to disclose to investors. Entirely missing from the AC is the disclosure of any adverse financial impact or anything bad that happened and allegedly caused the stock price to decline. Short sellers admittedly published reports taking a contrary view to Defendants' "bullish pronouncements" and "touting" of fuboTV's business model. But a battle of opinions between a company and self-interested short sellers is not securities fraud, and Plaintiff cannot state a claim by arguing that Defendants should have adopted short-sellers' pessimistic views. The Court should dismiss Plaintiff's claims as insufficiently pleaded as a matter of law.

**ARGUMENT**

**A.    Plaintiff Does Not Meaningfully Dispute That The AC Is A Puzzle Pleading**

The AC invokes improper puzzle pleading: it requires this Court to guess which portions of 44 (often lengthy and block-quoted) paragraphs were allegedly misleading and which of five supposedly "adverse facts"[1] correspond to each alleged misrepresentation. Mot. at 8-10. Instead of seriously refuting this argument, Plaintiff claims, in a perfunctory footnote, that the case law prohibiting puzzle pleading is distinguishable because the AC's 44 paragraphs take up just 15 pages. Opp. at 8 n.2. But there is no page-limit exception to the PSLRA and Rule 9(b). In contrast to *Construction Laborers Pension Trust for Southern California v. CBS Corporation*, 433 F. Supp.

---

[1] The Opposition abandons the alleged "adverse fact" regarding fuboTV's valuation, AC ¶ 83— and therefore concedes that it fails. *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (arguments not addressed in opposition brief are conceded).

3d 515, 530 (S.D.N.Y. 2020) (Opp. at 8 n.2), the AC should be dismissed because it fails to identify which portions of the 44 paragraphs contain misrepresentations, relies on a single generalized paragraph reciting five supposed omissions (AC ¶ 83), and makes no attempt to explain why any statement was misleading without disclosing a particular fact.

### B.    The AC Fails To Identify Any False Or Misleading Statements Or Omissions

The AC's entire theory of liability is based on purportedly omitted facts that are not facts at all but instead are negative opinions and characterizations lifted from short-seller reports published following an increase in fuboTV's stock price. Mot. 11-12. Plaintiff's alleged "adverse facts" are bearish predictions that fuboTV's business model was doomed to fail because supposedly its costs were too high, its inventory and data too limited, its sports wagering deal too small, and its competition too steep. But a company is not required to predict its own failure. *See Singh v. Schikan*, 106 F. Supp. 3d 439, 448 (S.D.N.Y. 2015) ("[C]ompanies need not depict facts in a negative or pejorative light or draw negative inferences to have made adequate disclosures.").

To be sure, Defendants specifically disclosed each of the *risks* underlying the short-sellers' predictions—*e.g.*, that (1) contractual cost commitments created risks to fuboTV's margins, (2) the effectiveness of its data analytics created risks to subscriber growth and advertising sales, (3) a failure to differentiate itself in a highly competitive industry created risks to subscriber attraction and retention, and (4) there were "risks related to [fuboTV's] ability to successfully develop and market a sports wagering offering" and that "no one should think of [fuboTV] as a . . . wagering company." Mot. at 12-14 (citing George Decl. Ex. L at 4, 13, 26; Ex. M at 9). But nowhere does the AC allege that any of those risks ever materialized. Plaintiff never identifies any undisclosed margin, subscriber, or advertising-sales decline; any failure to capitalize on the Balto Acquisition (due to the small number of Balto employees or otherwise); or any facts suggesting the short sellers' bearish predictions ever came true—let alone that those predictions were "facts" in

2

existence at the time of the challenged statements. *See In re Micro Focus Int'l Plc Sec. Litig.*, 2020 WL 5817275, at *6 (S.D.N.Y. Sept. 29, 2020) (Carter, J.) (plaintiff failed to plead falsity regarding integration and planned success of merger where "Plaintiff pleads no facts showing Micro Focus did not plan to integrate their system with HPE Software's system or had not been building its management team to steer the Merger").

Nor do the CWs ride to Plaintiff's rescue. Plaintiff relies on CW #1 in arguing that Defendants should have disclosed risks relating to purportedly "undisclosed" cost provisions in content agreements. Opp. at 9. But Defendants disclosed risks relating to high content costs, Mot. at 12-13, including that content agreements "sometimes required us to pay minimum license fees for content that are not tied to subscriber" numbers, George Decl. Ex. L at 13, and that fuboTV was "not in compliance with the payment obligations of a significant number of our significant content provider agreements," *id.* In any event, CW #1's allegations about two content deals falling through in 2019, before the Class Period, say nothing about allegedly undisclosed contract provisions or fuboTV carrying high content costs. On the contrary, if the deals fell through, then fuboTV was not carrying those costs. Nor does the AC even allege that the deals fell through because fuboTV "was not in the position to absorb the high content costs," Opp. at 9, or that they had any negative impact on fuboTV's margins in 2019, much less during the alleged Class Period.

Plaintiff also relies on CW #1 to allege that fuboTV supposedly "did not possess enough lucrative" user data to share with content providers for targeted advertising. Opp. at 11. But Plaintiff never points to any statement inconsistent with that supposed omission. For example, Plaintiff repeatedly quotes the Registration Statement's description of its "technology" and "data," Opp. at 10, 13 (citing AC ¶ 61), but Plaintiff does not identify any statement in the Registration Statement that fuboTV was sharing user data with content providers. AC ¶ 61 (describing

3

technology and data that "allow us to … adjust our product and strategy to better meet the needs of our subscribers"). Neither does the *Kerrisdale Report* say anything about sharing user data or about targeted advertising. George Decl. Ex. I at 18 (opining that fuboTV's advertising goals faced hurdles because fuboTV "doesn't own the content and has relatively few relationships with brands and agencies"). In any event, CW #1 was not even at fuboTV during the Class Period *at all*, AC ¶ 26, so regardless of fuboTV's technology capabilities and CW #1's attendance at unspecified, pre-Class Period "meetings with content providers," Opp. at 11, CW #1's allegations do not shed light on fuboTV's technology or advertising practices months and perhaps even years later. *See Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 799–800 (S.D.N.Y. 2020).[2] Nor does Plaintiff describe with "sufficient particularity to support the probability" that CW #1, who was an engineer, was "in [a] position" that "would possess the information" about fuboTV's advertising practices. *Francisco v. Abengoa S.A.*, 481 F. Supp. 3d 179, 208 (S.D.N.Y. 2020); AC ¶ 26.

Lastly, Plaintiff relies on CW #2 and CW #3 for the proposition that fuboTV supposedly lagged behind competitors in offering "only limited DVR space and un-skippable advertisements" and "not unique" "black out abilities." Opp. at 14. But again, Plaintiff fails to explain how any of these allegations contradict any challenged statement, none of which says anything about DVR space, "un-skippable advertisements," or "black out abilities." AC ¶ 109.

---

[2] Plaintiff is also wrong that the Court must consider the CW allegations even though CW #1 and CW #3 left fuboTV before the Class Period. Far from rejecting "identical arguments," *Blanford* relied on CW allegations of fraudulent accounting practices during "the same quarter" of assurances to investors that those practices were not occurring. 794 F.3d 297, 307 (2d Cir. 2015). *Iowa Public Employees Retirement System v. MF Global, Ltd.*, 620 F.3d 137, 143 n.13 (2d Cir. 2010), and *In re Scholastic Corp. Securities Litigation,* 252 F.3d 63, 72 (2d Cir. 2001), did not involve CW allegations predating the class periods. As *Francisco* explained in declining to apply *Blanford* to CWs not employed during the class period, "[c]ourts have rejected confidential witness allegations where the confidential witnesses 'left the company before the class period.'" *Francisco*, 481 F. Supp. 3d at 208 (internal citation omitted).

C.        The Alleged Misstatements Are Puffery Or Otherwise Not Actionable

**Puffery**.   Plaintiff's Opposition confirms that the AC challenges supposedly "bullish pronouncements," "self-aggrandizement," and statements "touting" fuboTV's business deals and optimism for the future.  Opp. at 1-2, 8, 14.  Plaintiff tries to turn such classic corporate optimism into a securities claim by asserting without explanation that these statements are "subject to objective verification."  Opp. at 17-18.  But whether or not fuboTV's "bold moves" are evidence of its "***ability to leverage***," Opp. at 17 (adding emphasis to AC ¶ 70), is exactly the type of general puffing that courts hold inactionable.  *See Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 569-70 (S.D.N.Y. 2018) (statements suggesting "Xerox's confidence in its competitiveness" and "vaguely and enthusiastically describ[ing] Xerox's performance, [and] expectations of business success" were inactionable puffery).  The statements here are nothing like the objectively verifiable statements in *Ford Fusion* (Opp. at 17).  *In re Ford Fusion & C-MAX Fuel Econ. Litig.,* 2017 WL 3142078, at \*10 (S.D.N.Y. July 24, 2017) (comparing cars' performance to measurable benchmarks such as "double[] the fuel economy" of other cars).[3]

**Opinion.**  Plaintiff defends only two of the six inactionable opinions[4] but even with those

---

[3] The cases on which Plaintiff relies (Opp at 17 & n.6) only underscore that the general statements at issue here fall on the inactionable side of the line.  *Galeston v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 303 (S.D.N.Y. 2018), involved "specific references to the 'popularity'" of a refinance program despite "material productivity and delinquency concerns relating to the new loans."  *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron Inc.*, 741 F. Supp. 2d 474, 484-85 (S.D.N.Y. 2010), held that "more general statements" "that the PPM was "on track'" were *not* actionable, distinguishing "positive descriptions of the PPM's ongoing performance among minority groups [as] statements of specific, present-day fact, not optimistic predictions of the future."  *In re Computer Association Class Action Securities Litigation*, 75 F. Supp. 2d 68, 73 (E.D.N.Y. 1999), involved statements about "the supposed health of the company" despite known adverse business trends, including "alleged improper accounting and revenue inflating practices."  And *Manavazian v. Atec Group*, 160 F. Supp. 2d 468, 474 (E.D.N.Y. 2001), similarly distinguished "rosy predictions" from "positive characterizations" of "current and future business conditions," despite known adverse business trends.

[4] Plaintiff waived the other four (AC ¶¶ 48, 57, 65, 75).  *UBS*, 2012 WL 4471265, at \*11.

two, still does not point to particularized facts necessary to satisfy the *Omnicare*'s rigorous standard, as Defendants explained, Mot. at 16-17 (discussing *Omnicare*).

**Forward-Looking.**    Defendants' statements about fuboTV's "opportunity," "plans," "goals," "strategy," and the assumptions underlying the Balto deal and its business model, fall squarely within the PSLRA's definition of forward-looking statements.  15 U.S.C. § 78u-5(i)(1). Plaintiff's claim that these statements concern "present fact[s]," Opp. at 14, ignores the statements' plain language[5] and is, in any event, insufficient to avoid the safe harbor.  *See Villare v. Abiomed, Inc.*, 2021 WL 4311749, at *16 (S.D.N.Y. Sept. 21, 2021) (holding that "the present-tense portion of mixed present and future statements" is not actionable when it "does not provide specific information about the current situation, but merely says that, whatever the present situation is, it makes the future projection attainable") (internal citations omitted).

These forward-looking statements are protected under the safe harbor for two independent reasons.  First, as explained in the Motion at 18-19, the AC fails to adequately plead facts demonstrating "actual knowledge that the statement was false or misleading."  15 U.S.C. § 78u-5(c)(1)(B).  As in *Villare*, Plaintiff "responds with just one footnote" generically arguing that "Defendants made those statements 'with actual knowledge of their falsity,'" and therefore "fails to meaningfully contest Defendants' argument in [his] opposition" and "concedes the issue of actual knowledge."  2021 WL 4311749, at *17.

Second, meaningful language accompanied the statements.  15 U.S.C. § 78u-5(c)(1)(A).

---

[5] *See*, *e.g.*, AC ¶ 39 (March 23, 2020 statement regarding fuboTV's "goal[s]" after the FaceBank Merger), ¶ 45 (May 29, 2020 statement about what the FaceBank Merger "*will* create…" and "fuboTV *plans to leverage FaceBank's IP*…"), ¶ 66 (November 10, 2020 statement regarding fuboTV's "expect[ations]" of future margin growth and "goal[s]" related to future expansion into online sports wagering), ¶ 73 (November 10, 2020 statement regarding fuboTV's projected success in wagering opportunities), ¶ 75 (December 1, 2020 statement regarding fuboTV's goals related to expansion into online sports wagering).

Plaintiff disputes the cautionary language on the ground that, for example, the March 23, 2020 Press Release's cautionary language does not "have anything to do with" the AC allegations. Opp. at 15-16. That makes no sense. The AC challenges the Press Release's statements about the FaceBank Merger. AC ¶ 39. Those statements were plainly accompanied by cautionary language warning investors about fuboTV's ability to achieve "the anticipated benefits of the transaction." Mot. at 18 (citing George Decl. Ex. B at 3). To the extent Plaintiff argues that the March 23, 2020 Press Release—or any of the forward-looking statements—should also have "address[ed] Fubo's omission relating to its financial model, Fubo's proprietary technology, sports wagering or its purported advantage over its peers," Opp. at 15, that argument falls into the morass of Plaintiff's puzzle pleading.[6] Nowhere in the AC does Plaintiff suggest that, for example, the March 23, 2020 Press Release about the FaceBank Merger should have disclosed anything about fuboTV's technology, let alone about a sports wagering acquisition that wouldn't occur until eight months later. So too with the May 29, 2020 10-K statement about the Merger. AC ¶ 45. As for the remaining forward-looking statements, they post-dated the warnings in the Registration Statement. Mot. at 13-14. As Defendants explained—and Plaintiff does not dispute—when a company warns that forward-looking statements are subject to particular risks, it need not repeat those warnings with each subsequent statement, Mot. at 18 n.8, particularly where, as here, Defendants pointed investors to the risk factors in prior SEC filings. *E.g.*, George Decl. Ex. C at 2.

**Accurate Statements of Historical Fact.** Plaintiff does not dispute, and thereby concedes, that the accurate historical financial information challenged in the AC is not actionable. Mot. at

---

[6] Plaintiff's own argument demonstrates the allegations' confused nature. Plaintiff challenges a statement about fuboTV's "expect[ations]" of future margin growth. AC ¶ 66. Yet Plaintiff complains (without explanation) that specific warnings on that very topic, Mot. at 13 (citing George Decl. Ex. L at 13), have "nothing to do with the issues complained of." Opp. at 16.

19; *UBS*, 2012 WL 4471265, at *11.

### D.    Plaintiff Fails To Plead Scienter

The AC fails to establish a "strong inference" of scienter as to *each* Defendant and *each* alleged misstatement.  Mot. at 19-23.  The AC does not even mention Defendant Nardi in the scienter allegations, AC ¶¶ 135-142, and the only allegation about Defendant Bronfman concerns his involvement with a different company a decade ago, *id.* ¶ 142.  Nor does the Opposition contain any arguments specific to either of those Defendants. Opp. at 19-23.  Even apart from fatal group pleading, "[n]one of [the AC's allegations], considered individually or together, are sufficient to plead scienter."  *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *6 (S.D.N.Y. Dec. 16, 2014).  Indeed, the most compelling inference is that Defendants were excited about fuboTV as a growing company, and when the stock price rose following bullish analyst reports, those shorting fuboTV stock published negative opinions to protect their positions.  And Plaintiff fails to allege that any of the short-seller's negative predictions ever came to pass.

**Motive.**  Plaintiff claims that motive is properly alleged because fuboTV "touted its growth prospects and advantages" in order "to raise capital," and Defendants' executive compensation and bonuses are tied to performance.  Opp. at 23.  But these financial incentives "are common to most corporate officers" and "do not constitute 'motive.'"  *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  Plaintiff's reliance on *In re OSG Securities Litigation*, 971 F. Supp. 2d 387, 404 (S.D.N.Y. 2013) (Opp. at 23), is misleading.  *OSG* held that personal financial motive may suffice to show that a defendant *solicited* a plaintiff's purchase for purposes of a claim under *Section 12 of the Securities Act*.  *Id.* at 404.  But in the relevant discussion of *scienter* for a *10b-5 claim*, *OSG* rejected the same argument, recognizing that Second Circuit case law holds that typical financial interests are not sufficient to allege motive to defraud.  *Id.* at 407-08.

**Recklessness**.    Having  failed  to  plead  motive,  Plaintiff's  boilerplate  recklessness

allegations do not meet the "correspondingly greater" pleading standard.  *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).  Plaintiff asserts that "the Defendants were aware of" certain allegations, but none of the AC allegations Plaintiff cites says anything about *Defendants' awareness* of any information at all.  Opp. at 19-20 (citing ¶¶80-82, 90-100, 107-109).  Indeed, in the cited paragraphs, the AC does not even identify Defendants Nardi or Bronfman and identifies Defendant Gandler just twice—noting only that he discussed an acquisition before the Class Period and made a statement in the July 8, 2020 shareholder letter.  These are not scienter allegations.

Plaintiff runs away from the AC's scienter allegations that Defendants must have known their statements were false due to their generalized access to information.  This is for good reason: in order to allege scienter based on "knowledge of facts or access to information contradicting their public statements," Plaintiff had to allege "[1] *specific contradictory information* was available to the defendants [2] at the same time they made their misleading statements."  *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 813 (S.D.N.Y. 2018) (Carter, J.) (emphasis added).  The AC does not allege any *specific* information at all, much less contradictory information Defendants had at the time.  Plaintiff relies on CW statements about "important deals . . . fall[ing] through" and Defendant Gandler's attendance at meetings and "hands-on" nature.  Opp. at 20-21.  But none of this shows that any Defendant had any information that contradicted any challenged statement, and thus says nothing about any Defendant's mental state.  *See Cox v. Blackberry Ltd.*, 660 F. App'x 23, 25 (2d Cir. 2016) (dismissing complaint when it "fails to allege any particularized facts suggesting that defendants actually possessed information contradicting their public statements").

Plaintiff also invokes the core operations doctrine and the temporal proximity[7] of the short-

---

[7] Plaintiff's cases involved statements that were temporally proximate to either restatements, *In re Pareteum Sec. Litig.*, 2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021), or insider stock sales, *S.E.C. v. Fiore*, 416 F. Supp. 3d 306 (S.D.N.Y. 2019).

seller reports to the Balto statements.  Opp. at 22-23.  Neither raises a strong inference of scienter on its own.  *In re Supercom Inc., Sec. Litig*, 2018 WL 4926442, *31-32 (S.D.N.Y. Sept. 10, 2018).  Even as a supplement, the core operations doctrine requires Plaintiff to "plead that a defendant made false or misleading statements when contradictory facts of critical importance to the company either were apparent, or should have been apparent."  *City of Pontiac Gen. Empls. Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 371 (S.D.N.Y. 2012).  As discussed, Plaintiff fails to plead any specific contradictory facts, much less ones apparent and critical to fuboTV.

### E.    Plaintiff Fails To Plead Loss Causation

The AC fails to plead loss causation because Plaintiff does not identify specific, material facts that were previously concealed from the market and brought to light in the short-seller reports, *see Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43, 347 (2005), Mot. at 23-24.  Plaintiff claims the *Kerrisdale Report* reveals previously undisclosed information, Opp. at 24-25, but these alleged revelations were neither objective *facts*, nor previously undisclosed.  Mot. at 11-12, 14-15, 15 n.7.  Plaintiff does not (and cannot) claim that *Kerrisdale*'s discussion of fuboTV's status as a content aggregator rather than producer was previously undisclosed.  AC ¶ 38; Mot. at 2-3 (citing George Decl. Ex. A at 4-5).  Nor do *Kerrisdale*'s negative opinions about fuboTV's future profitability (AC ¶ 90), data and inventory (*id.* ¶ 96), and the Balto Acquisition (*id.* ¶ 100) correct any prior factual statement.  Mot. at 11, 13-15, 15 n.7; George Decl. Ex. I at 3.  For this reason, Plaintiff's case law about reports that revealed "accurate information" that exposed "actual misstatements by the company" are inapposite, Opp. at 2, 24, as the short-seller reports did neither.

### CONCLUSION

For the reasons stated above and in the Motion, the AC should be dismissed with prejudice.

10

Dated: December 9, 2021
    New York, NY

Respectfully Submitted,

**LATHAM & WATKINS LLP**

/s/ Andrew B. Clubok

Andrew B. Clubok
Susan E. Engel
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: andrew.clubok@lw.com
      susan.engel@lw.com

Nicholas J. Siciliano (*pro hac vice*)
Kathryn K. George (*pro hac vice*)
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
Email: nicholas.siciliano@lw.com
      kathryn.george@lw.com

*Attorneys for Defendants*

11