**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE FUBOTV INC. SECURITIES
LITIGATION

Case No. 1:21-cv-01412 (ALC) (JLC)

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM IN SUPPORT DEFENDANTS' MOTION TO DISMISS SECOND**
**AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6)**

**TABLE OF CONTENTS**

**Page**

Introduction ................................................................................................................1

Factual And Procedural Background ..........................................................................3

Legal Standard ...........................................................................................................5

Argument ...................................................................................................................6

    A.    The SAC Fails To Plead A Section 10(b) Claim ........................................6

        1.    Plaintiff Fails To Plead A Materially False Or Misleading Statement ...............................................................................6

            a.    Plaintiff's Puzzle Pleading Still Fails To Satisfy The Heightened Pleading Requirements ................................7

            b.    Plaintiff Again Fails To Plead That fuboTV Made Any False Or Misleading Statement ........................................8

            c.    The Alleged Misstatements Are Puffery Or Otherwise Not Actionable As Pled .........................................14

                (1)    Many Of The Challenged Statements Are Puffery ............14

                (2)    Many Of The Challenged Statements Are Opinions .........15

                (3)    Many Of The Challenged Statements Are Forward-Looking Statements Protected By The PSLRA Safe Harbor .................................................................16

                (4)    Many Of The Challenged Statements Are Accurate Statements Of Historical Data .........................................17

        2.    Plaintiff Fails To Plead Scienter .................................................17

        3.    Plaintiff Fails To Plead Loss Causation......................................22

    B.    The SAC Fails To Plead A Section 20(a) Claim ...................................23

    C.    The SAC Should Be Dismissed With Prejudice ...................................24

Conclusion ...............................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acito v. IMCERA Grp.*,
47 F.3d 47 (2d Cir. 1995) ....................................................................................... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 5

*Asher v. Baxter Int'l Inc.*,
377 F.3d 727 (7th Cir. 2004) .................................................................................. 17

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ....................................................................................... 3

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019) ................................................................. 3, 4

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ................................................................................................ 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................. 5

*Broidy Cap. Mgmt. LLC v. Benomar*,
944 F.3d 436 (2d Cir. 2019) ................................................................................... 24

*C.D.T.S. No. 1 v. UBS AG*,
2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013) ..................................................... 9, 18

*Campo v. Sears Holdings Corp.*,
371 F. App'x. 212 (2d Cir. 2010) ........................................................................... 21

*Cavello Bay Reinsurance Ltd. v. Stein*,
2020 WL 1445713 (S.D.N.Y. Mar. 24, 2020) ....................................................... 24

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
543 F. App'x 72 (2d Cir. 2013) .............................................................................. 23

*Das v. Rio Tinto PLC*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018) .................................................................... 21

*Delshah Grp. LLC v. Javeri*,
2013 WL 2322488 (S.D.N.Y. May 28, 2013) .......................................................... 6

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................. 22

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ............................................................................... 11, 18

*Elek v. Inc. Village of Monroe*,
  815 F. Supp. 2d 801 (S.D.N.Y. 2011) ..................................................................... 24

*Francisco v. Abengoa*,
  481 F. Supp. 3d 179 (S.D.N.Y. 2020) ...................................................................... 6

*Francisco v. Abengoa, S.A.*,
  559 F. Supp. 3d 286 (S.D.N.Y. 2021) ..................................................................... 24

*GAMCO Inv'rs, Inc. v. Vivendi Universal, S.A.*,
  838 F.3d 214 (2d Cir. 2016) ..................................................................................... 6

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011) ..................................................................... 21

*In re Arcimoto Inc., Sec. Litig.*,
  2022 WL 17851834 (E.D.N.Y. Dec. 22, 2022) ........................................................ 22

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004) ..................................................................... 17

*In re Diebold Nixdorf, Inc. Sec. Litig.*,
  2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ......................................................... 20

*In re Doral Fin. Corp. Sec. Litig.*,
  563 F. Supp. 2d 461 (S.D.N.Y. 2008) ..................................................................... 10

*In re EHang Holdings Ltd. Sec. Litig.*,
  2022 WL 17718546 (S.D.N.Y. Dec. 15, 2022) ........................................................ 22

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014) ................................................................. passim

*In re Nokia Corp. Sec. Litig.*,
  2021 WL 1199030 (S.D.N.Y Mar. 29, 2021) ...................................................... 14, 15

*In re Nokia OYJ (Nokia Corp.) Sec. Litig.*,
  423 F. Supp. 2d 364 (S.D.N.Y. 2006) ..................................................................... 17

*In re Omnicom Grp., Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010) .................................................................................... 22

*In re Solarcity Corp. Sec. Litig.*,
    274 F. Supp. 3d 972 (N.D. Cal. 2017)................................................................................... 15

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ....................................................................... 18

*In re Worldcom, Inc. Secs. Litig.*,
    2004 WL 2889974 (S.D.N.Y. Dec. 15, 2004)........................................................................ 24

*In re Yukos Oil Co. Sec. Litig.*,
    2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006)................................................................... 18, 20

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ................................................................................................ 19

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991) .................................................................................................. 3

*Lau v. Opera Ltd.*,
    527 F. Supp. 3d 537 (S.D.N.Y. 2021) ................................................................................. 13

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ................................................................................................ 23

*Leykin v. AT&T Corp.*,
    423 F. Supp. 2d 229 (S.D.N.Y. 2006) ................................................................................. 23

*Lighthouse Fin. Group v. Royal Bank of Scotland Group, PLC*,
    2013 WL 4405538 (S.D.N.Y. Aug. 5, 2013) ....................................................................... 23

*Lipow v. Net 1 UEPS Techs., Inc.*,
    131 F. Supp. 3d 144 (S.D.N.Y. 2015) ................................................................................... 9

*Long Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020) ................................................................................. 20

*Lopez v. CTPartners Exec. Search Inc.*,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016) ..................................................................................... 9

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
    518 F. Supp. 3d 772 (S.D.N.Y. 2021) ................................................................................. 21

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) .......................................................................................................... 6, 7

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013)........................................................................................... 23

iv

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) .................................................................... 19, 20, 21

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
    300 F. Supp. 3d 551 (S.D.N.Y. 2018) .................................................................. 15

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
    98 F.3d 2 (2d Cir. 1996) .................................................................. 13

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) .................................................................. 15

*Ong v. Chipotle Mexican Grill, Inc.*,
    294 F. Supp. 3d 199 (S.D.N.Y.) .................................................................. 9, 12

*Plumber & Steamfitters Local 773 Pension Fund, Boston Ret. Sys. v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) .................................................................. 17

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Com.*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010) .................................................................. 19

*Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*,
    2023 WL 3569068 (S.D.N.Y. May 19, 2023) .................................................................. 15

*Resnik v. Swartz*,
    303 F.3d 147 (2d Cir. 2002) .................................................................. 7

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)), *aff'd*, 605 F. App'x 62 (2d Cir. 2015) .................................................................. 6

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) .................................................................. 3

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009) .................................................................. 18

*S.E.C. v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997) .................................................................. 23

*Sfiraiala v. Deutsche Bank Aktiengesellschaft*,
    729 F. App'x 55 (2d Cir. 2018) .................................................................. 5

*Sgalambo v. McKenzie*,
    739 F. Supp. 2d 453 (S.D.N.Y. 2010) .................................................................. 3

*Sinay v. CNOOC Ltd.*,
    2013 WL 1890291 (S.D.N.Y. May 6, 2013) .................................................................. 19

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010) .................................................................................. 16, 17

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
   547 F.3d 406 (2d Cir. 2008) .......................................................................................... 3

*Stratte–McClure v. Morgan Stanley*,
   776 F.3d 94 (2d Cir. 2015) ............................................................................................ 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................................................. 5, 18

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016) ........................................................................................ 15

*W. Virginia Inv. Mgmt. Bd. v. Doral Fin. Corp.*,
   344 F. App'x 717 (2d Cir. 2009) ................................................................................. 10

*Wilson v. Merrill Lynch & Co.*,
   671 F.3d 120 (2d Cir. 2011) ........................................................................................ 24

*Wyche v. Advanced Drainage Sys.*,
   710 F. App'x 471 (2d Cir. 2017) ................................................................................. 19

## STATUTES

15 U.S.C. § 78u-4(b).......................................................................................... passim

15 U.S.C. § 78u-5(c).......................................................................................... 16, 17

15 U.S.C. § 78u-5(i)................................................................................................. 16

## RULES

Fed. R. Civ. P. 10b-5.............................................................................................. 10

Fed. R. Civ. P. 15(a) .............................................................................................. 25

Fed. R. Civ. P. 9(b) ............................................................................................. 6, 8

## TREATISES

5B Wright & Miller § 1357 (3d ed.2004 and Supp.2007).......................................... 3

## REGULATIONS

17 CFR § 240.10b–5(b) ............................................................................................ 7

**INTRODUCTION**

This Court issued a 30-page decision dismissing Plaintiff's prior complaint ("AC"), because (i) except for two sets of statements, Plaintiff relied on improper puzzle pleading, and (ii) for the remaining two sets of statements, Plaintiff failed to plead that either was false or misleading. March 30, 2023, Opinion and Order (Dkt. No. 42, "Op.") at 22-29.  Citing the Circuit's "usual practice," the Court granted leave to amend.  *Id.* at 29.  But *exactly* the same problems the Court identified plague the Second Amended Complaint ("Dkt. 45, SAC"), in complete disregard of this Court's Order.  *See* Dkt. 46-1, Ex. 1 (redline comparing AC to SAC).  Plaintiff *deletes* allegations but adds nothing of substance—and thus fails to remedy the fatal puzzle pleading of the AC. Plaintiff also continues to rely on the same confidential witness ("CW") this Court rejected as unreliable because that CW did not work at the Company during the Class Period.  The SAC has no basis in law or fact for all the reasons this Court already held.  It also fails to address the other fatal pleading deficiencies Defendants identified in their motion to dismiss the AC (Dkt. No. 34, "MTD"), including Plaintiff's failure to plead falsity for any statement, as well as failing to come anywhere close to pleading the requisite strong inference of scienter or loss causation.

***First***, Plaintiff fails to allege any false or misleading statement.  At the outset, most of the SAC is again textbook puzzle pleading.  The SAC still does not do what this Court said it must: explain how an allegedly omitted fact renders each challenged statement misleading—a fatal pleading flaw for any Section 10(b) claim.  15 U.S.C. § 78u-4(b)(1).  Plaintiff repeats two of the same supposed "facts" that he claimed in the AC rendered the statements misleading: (i) "Fubo's proprietary data and inventory was not, nor could it be, differentiated to allow Fubo to achieve its long term advertising growth goals," and (ii) "Fubo could not successfully compete and perform as a sports book operator and lacked any ability and resources needed to capitalize on its online sports wagering opportunity."  SAC ¶ 67.  But those asserted omissions are not facts at all.  Instead,

1

they come from pessimistic *opinions* in short-seller reports. As he did in opposing the MTD, Plaintiff rephrases the omissions in his letter responding to Defendants' request for a pre-motion conference (Dkt. No. 47, the "Letter" or "Ltr."), arguing that the omitted facts are that (i) fuboTV supposedly "did not have the technical ability to collect and utilize their proprietary customer viewing data in order to attract advertiser[s] and increase advertising revenue," and (ii) "Balto did not have the capability to create a licensed gaming operator." Ltr. at 2-3. But Plaintiff's revised versions fare no better. This Court already rejected Plaintiff's "technological capabilities" argument, Op. at 25-26, and Plaintiff's attack on Balto is still based on the short-seller reports. It also is not well-pled and does not render any particular statement misleading.

In addition, all the statements that Plaintiff challenges are non-actionable puffery (*e.g.*, fuboTV made "bold moves in the quarter and that really speaks to our ability to leverage our proprietary data," SAC ¶¶ 4, 54), opinions (*e.g.*, "we believe a significant portion of our subscribers would be interested in online wagering," *id.* ¶ 52), forward-looking statements (*e.g.*, "[w]e expect margin improvement to continue over time, aided by a number of initiatives," *id.* ¶ 51), or accurate historical financial information (*e.g.*, fuboTV reported "advertising revenue of $4.3 million" in Q2 2020, *id.* ¶ 41).

***Second***, the SAC does not support any inference of scienter at all, much less the requisite "strong inference." Plaintiff was required to allege as to *each* Defendant particularized facts showing either motive and opportunity to commit fraud or strong circumstantial evidence of conscious misbehavior or recklessness as to *each* statement. Instead, the SAC contains improper group-pled allegations that fail to differentiate between Defendants in any way. At most, the SAC alleges only that one Individual Defendant sold *one percent* of his stock during the Class Period and "attended meetings"—not surprisingly, courts routinely reject such paltry allegations as

insufficient to support scienter.  The SAC also again fails to allege any particular facts showing that any Defendant possessed contemporaneous information that contradicted the challenged statements.

***Third***, Plaintiff fails to plead loss causation, instead improperly relying only on negative opinions in short-seller reports as alleged corrective disclosures, all of which reveal no previously undisclosed, "corrective" facts.

Defendants respectfully request that the Court dismiss the SAC with prejudice.

### FACTUAL AND PROCEDURAL BACKGROUND

Founded in 2015, fuboTV is a live TV streaming platform for sports, news, and entertainment that offers subscribers an alternative to cable TV by allowing customers to engage with TV and audio through various devices, including TV, mobile phones, and tablets.  SAC ¶¶ 27-28; Ex. A at 4.[1]  fuboTV is part of the rapid shift to TV streaming that has "disrupted" the traditional cable TV distribution model.  Ex. A at 5.  fuboTV attracts consumers who "come for the sports [and] stay for the entertainment," and its goal is to build a category-defining service that provides consumers with a technology-driven cable TV replacement.  Ex. B at 2.

In November 2020, fuboTV announced its intentions to expand into the online sports wagering market, which it viewed as complementary to its sports-first live TV streaming platform

---

[1] As this Court explained, Op. at 16, the Court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" of which a court may take judicial notice.  *Sgalambo v. McKenzie*, 739 F. Supp. 2d 453, 470 (S.D.N.Y. 2010) (quoting *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d, 87, 98 (2d Cir. 2007)); *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); 5B Wright & Miller § 1357 (3d ed.2004 and Supp.2007).  The Court may also take judicial notice of, among other things, analyst reports, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008) and fuboTV's stock price, *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 248 n.11 (S.D.N.Y. 2019). All exhibits cited herein are incorporated by reference or fit these judicially noticeable categories.

given that its sports-focused subscribers would likely be interested in online wagering. *Id.* ¶ 52. Then, on December 1, 2020, fuboTV acquired Balto, a company that develops tools for users to organize and play fantasy sports games ("Balto Acquisition"). *Id.* ¶ 59; Ex. C at 1.

fuboTV's rapid growth as a traditional pay TV disruptor led to what one analyst deemed a tug of war on Wall Street. Bullish market analysts believed fuboTV sat at the forefront of a trend away from traditional TV viewership and a corresponding shift in TV ad dollars and were optimistic about fusing fuboTV's sports-streaming service with online sports wagering. For example, on December 15, 2020, Wedbush initiated coverage setting a price target of $40. Ex. D at 1. The stock price reacted positively, increasing from $26.47 to close at $29.70 on December 16, 2020.[2] On December 22, Needham boosted its price target from $30 to $60, citing "strong upside momentum into 2021 owing to … FUBO [] taking share from competitors; … upside from sports betting" and the expansion of the TV streaming business. Ex. F at 1. The stock price increased again in response to this report, closing at $62.00 on December 22, 2020.[3]

But from December 23, 2020 through January 4, 2021, a handful of short sellers and bearish analysts, including *Kerrisdale Report*, *Lightshed Partners*, and *Motley Fool*, very loudly tugged the other way, purporting to "question[]" and "criticize[]" fuboTV's business decisions, claiming that fuboTV "does not have any data or inventory that is differentiated [from competing streaming services] and cannot provide the reach many advertisers crave" and calling the Balto Acquisition "foolish" and a "fantasy." SAC ¶¶ 68-69, 71, 73-75, 80, 83-85; *see also* Ex. G (Kerrisdale Report) at 19 ("Fubo is no different from every other distributor in the world and Hulu+ Live, DTV, Comcast, and Charter – all reach many millions more homes."). BMO Capital Markets

---

[2] *See* Ex. E at 3; *see also Barilli*, 389 F. Supp. 3d at 248 n.11 (a court may consider publicly available stock prices without converting a Rule 12(b)(6) motion into one for summary judgment).

[3] *See* Ex. E at 3

downgraded fuboTV shares to "market perform" from "outperform," *id.* ¶ 69 but increased its 2021 target from $33 to $50. Ex. H at 1. Following these short-seller attacks, by January 4, 2021, fuboTV's stock had dropped back to its mid-December price, only to then increase again in a roller-coaster-like battle between the bulls and the bears. Securities lawsuits predictably followed.

Specifically, on July 12, 2021, Plaintiff filed the AC, which Defendants moved to dismiss. This Court granted the MTD and dismissed the AC in its entirety because (i) nearly all of the AC qualified as an improper puzzle pleading and (ii) for a few remaining challenged statements, Plaintiff failed to plead the requisite falsity. On May 22, 2023, Plaintiff filed the SAC, which suffers from the same deficiencies identified in this Court's Order and in Defendants' prior MTD.

## LEGAL STANDARD

As this Court explained in its Order, Op. at 15-17, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In fact, Plaintiff's securities fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which require Plaintiff to "stat[e] with particularity the circumstances constituting fraud." *Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55, 57 (2d Cir. 2018). Similarly, the PSLRA requires Plaintiff to, *inter alia*, "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (internal citation and quotation marks omitted) (quoting 15 U.S.C. § 78u-4(b)).

**ARGUMENT**

**A.    The SAC Fails To Plead A Section 10(b) Claim**

To avoid dismissal, Plaintiff had to allege with particularity, *inter alia*, a materially false or misleading statement, scienter, and loss causation. Op. at 18 (citing *GAMCO Inv'rs, Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 217 (2d Cir. 2016)). Plaintiff fails on all fronts. The SAC relies on short sellers' and other third parties' criticisms of fuboTV as the purported cause of stock declines between December 23, 2020, and January 4, 2021. But short-seller bets against fuboTV's future prospects do not state a claim for securities fraud. "The securities laws are not an insurance policy for investments gone wrong, inexperience, bad luck, poor choices, or unexpected market events." *Delshah Grp. LLC v. Javeri*, 2013 WL 2322488, at *1 (S.D.N.Y. May 28, 2013).

**1.    Plaintiff Fails To Plead A Materially False Or Misleading Statement**

As this Court explained, Op. at 19-20, to survive a motion to dismiss, Plaintiff must establish that Defendants "made a statement that was misleading as to a material fact." *Francisco v. Abengoa*, 481 F. Supp. 3d 179, 207 (S.D.N.Y. 2020) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011)). "The Second Circuit has repeatedly stated that plaintiffs must do more than simply assert that a statement is false—'they must demonstrate with specificity why that is so.'" *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) (quoting *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)), *aff'd*, 605 F. App'x 62 (2d Cir. 2015). Like the falsity of statements, omissions are actionable only if a defendant is under a duty to disclose information and fails to do so. *Id.*[4] Section "10(b) and Rule 10b–5(b) do not create an affirmative

---

[4] Without an actual statement, a "pure omission" can be "actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." *Stratte–McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015). Plaintiff does not allege a "pure omission" theory and was thus required (but failed) to identify an actual statement that was untrue or misleading with all the rigor required under the PSLRA.

6

duty to disclose any and all material information." *Matrixx*, 563 U.S. at 44; *see also Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002) (no duty to disclose information "simply because it may be relevant or of interest to a reasonable investor"). Instead, "[d]isclosure is required under these provisions only when necessary 'to make … statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx*, 563 U.S. 27 at 44 (quoting 17 CFR § 240.10b–5(b)).

The SAC fails to meet this threshold element for three independent reasons: (i) it employs puzzle pleading and is thus insufficiently particular to state a claim for securities fraud; (ii) the "omitted facts" do not render any statement false or misleading because (a) the two purportedly omitted "facts" are conclusory third-party *opinions* about fuboTV while (b) their rephrased counterparts are unsupported assertions that do not contradict any challenged statement; and (iii) all of the challenged statements are non-actionable puffery, opinions, forward-looking statements, and/or historically accurate information.

a.    *Plaintiff's Puzzle Pleading Still Fails To Satisfy The Heightened Pleading Requirements*

The Court dismissed all but two sets of statements in the AC because Plaintiff filed a puzzle pleading. Op. at 22-24. The AC listed the challenged statements in forty-four paragraphs, followed by a single paragraph identifying five alleged omissions, with no explanation why a particular omission rendered any particular statement misleading. *Id*. at 22. The SAC repeats the same puzzle pleading. This time, Plaintiff deletes sixteen of the forty-four paragraphs and three of the five supposed omissions. SAC ¶¶ 36-65. But Plaintiff's deletions do not address this Court's prior decision: "To meet the heightened pleading standard of the PSLRA and Rule 9(b), the plaintiff 'must do more than simply assert that a statement is false—[he] must demonstrate *with specificity why* that is so.'" Op. at 24 (emphasis added) (quoting *Lululemon*, 14 F. Supp. 3d at 571).

7

Plaintiff had to "specify *each statement* alleged to have been misleading," as well as "the reason or reasons why the statement is misleading." Op. at 23 (quoting 15 U.S.C. § 78u-4(b)(1)). Yet the SAC does nothing of the sort. Plaintiff claims the SAC is not a puzzle pleading because it includes factual allegations as background and incorporates preceding paragraphs into causes of action. Ltr. at 2. But the problem with the SAC is not incorporation of prior paragraphs, but its disregard of the Court's Order. The SAC still "does not with any particularity attempt to connect the vast majority of the challenged statements with the alleged omitted material facts," Op. at 24.[5] That the SAC is not "hundreds of pages long," Ltr. at 2, is beside the point. The SAC may contain fewer challenged statements than its predecessor, but Defendants and the Court are still "left to guess which statements are 'materially false and misleading' and why." Op. at 23.

Plaintiff's puzzle pleading, once again, is alone grounds for dismissal, this time with prejudice.

> b.      *Plaintiff Again Fails To Plead That fuboTV Made Any False Or*
>         *Misleading Statement*

As with the AC, the SAC fails to plead falsity for any statement. Op. at 24-29.

**Proprietary Data and Advertising.**   Plaintiff alleges that twenty-six paragraphs of fuboTV's public statements over seven months were false or misleading because they failed to disclose that "Fubo's proprietary data and inventory was not, nor could it be, differentiated to allow Fubo to achieve its long term advertising growth goals." SAC ¶ 67. But this alleged omission simply parrots one side of competing market opinions about fuboTV's business. *See* Ex. G at 3. Indeed, the *Kerrisdale Report* specifically states that "[a]ll content in this report represent the

---

[5] As just a few examples, Plaintiff includes within the twenty-six paragraphs statements ranging from fuboTV changing its name and ticker symbol (SAC ¶ 39) to various SOX certifications (*id.* ¶¶ 43, 58) but alleges no particular facts explaining why or how they were false or misleading.

opinions of Kerrisdale." *Id.* at 22. Competing views about a company are not a material fact that can support a claim of securities fraud. *See C.D.T.S. No. 1 v. UBS AG*, 2013 WL 6576031, at *4 (S.D.N.Y. Dec. 13, 2013) (media reports "criticizing UBS's risk controls" did not support falsity); *Lipow v. Net 1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 170 (S.D.N.Y. 2015) (citation omitted) (company not required to "disclose what would have been pure speculation").

Plaintiff rephrases this alleged omission in the Letter and in scattered allegations throughout the SAC, claiming that fuboTV supposedly "did not have the technical capability to collect its own proprietary customer data necessary to leverage and target advertisers and therefore increase its advertising revenue." SAC ¶¶ 49, 55; *see also* Ltr. at 2-3 (alleging fuboTV "did not have the technical ability to collect and utilize their proprietary customer viewing data in order to attract advertiser and increase advertising revenue"). But this Court rejected that "rephrased [] adverse fact" too, finding it did not render any challenged statement false or misleading. Op. at 25. The challenged statements about "leveraging our data" to provide advertising (SAC ¶ 38, 46, 54) do not discuss the extent of fuboTV's "technical capability" to collect and utilize customer data and are thus "far too attenuated from the alleged omission" to "trigger a corresponding duty to disclose." *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 233 (S.D.N.Y.) (citing cases); *see also Lopez v. CTPartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 32 (S.D.N.Y. 2016) (rejecting argument that a company needed to disclose involuntary turnover rate to make statements about voluntary turnover rate not misleading).

Plaintiff asserts that fuboTV had "zero" technical capabilities to collect and utilize customer data, SAC ¶ 4, but there is not one fact in the SAC supporting that allegation—or any allegation about the extent of fuboTV's technical capability to collect and utilize customer data for advertising. CW #1 provides Plaintiff no support, SAC ¶¶ 25-26, 76-79, because the Court already

9

held that CW #1 was unreliable. Specifically, the Court held that "although [they] attended . . . meetings where advertising was discussed, they were no longer at Fubo during the Class Period," and their allegations therefore cannot support "contemporaneous falsity." Op. at 21-22; *see also Lululemon*, 14 F. Supp. 3d at 571 (violation of Section 10(b) and Rule 10b-5 premised on misstatements "cannot occur unless an alleged material misstatement was false *at the time it was made*"). The SAC adds only one new sentence about CW #1: "CW #1 participated in Fubo's contract meetings with content providers where the issue of Fubo's technical inability to target advertisements was discussed often, stating 'I remember a lot of conversation about this.'" SAC ¶ 76. But this additional sentence ignores the Court's ruling about *timing*. Moreover, the fact that CW #1 "remember[s]" conversations—without disclosing the *content* of those conversations— hardly supports falsity. *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (allegation that CW attended meetings during which certain reports were discussed was "so vague as to be meaningless, because it contains no time frame within which the meetings occurred, . . . and no information regarding how extensively or in what manner the reports were discussed"), *aff'd sub nom. W. Virginia Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717 (2d Cir. 2009).

Nor can Plaintiff rely on the *Kerrisdale Report* to support his allegation that fuboTV lacked the technical capability to collect and utilize customer data for advertising. The Court already found the *Kerrisdale Report* "does not state anything about the Company sharing user data or about targeted advertising," Op. at 26, and Plaintiff does not otherwise explain how that report renders any particular statement misleading. Instead, as the SAC admits, the *Kerrisdale Report* opines only that fuboTV lacks data or content inventory different from its competitors. *See supra* Section A.1.a; *see also* SAC ¶ 7 (the short-seller reports allegedly disclosed that "Fubo's user data and inventory *were not differentiated* to allow Fubo to achieve its long-term advertising growth goals")

10

(emphasis added); Ex. G at 21 ("Appendix 1: Channel Line-up is Undifferentiated" comparing fuboTV's "sports content offerings" versus its peers).

Plaintiff's allegation also makes no sense. While Plaintiff claims that fuboTV should have disclosed that its supposed technical inability was "severely limit[ing]" and "handicapp[ing]" its advertising revenue "prospects," SAC ¶ 4, in fact, fuboTV's advertising revenues soared during and after the Class Period. Advertising revenues increased from $12.5 million in 2019 to $24.9 million in 2020 and $73.7 million in 2021. *See* Ex. B at 1, Ex. L at 43, Ex. M at 54; *see also Lululemon*, 14 F. Supp. 3d at 570 (citing *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009)) ("plaintiffs must provide sufficient particularity in their allegations to support a *plausible* inference that it is more likely than not that a securities law violation has been committed") (emphasis added).

**Balto**. Plaintiff also alleges that the same twenty-six paragraphs of fuboTV's public statements were false or misleading because "Fubo could not successfully compete and perform as a sports book operator and lacked the ability and resources needed to capitalize on its online sports wagering opportunity." SAC ¶ 67. But this alleged omission again depends solely on short-seller and bearish analyst *opinions* criticizing fuboTV's business strategy and future prospects. Indeed, this "fact" parrots *Lightshed Partners*, which "called the prospects of Fubo achieving success with sports betting a 'fantasy,'" SAC ¶ 68, Ex. I at 5, as well as the *Kerrisdale Report*'s opinions that the Balto Acquisition was a "'foolish' attempt to enter the 'already highly competitive space [of sport wagering].'" SAC ¶ 80; Ex. G at 3. Plaintiff has not alleged securities fraud at all, but simply repeats one side of competing market opinions on whether fuboTV's strategy of moving into online sports wagering would succeed. In mid-December, one analyst (Wedbush) published positive predictions about fuboTV and the stock price rose. *See* Exs. D at

11

1, E at 3.  Eight days later, bearish analysts and short sellers responded by issuing negative opinions that drove the stock price down.  *See* SAC ¶¶ 68-86.  Plaintiff then copied those later negative reports into the AC, and again into the SAC.  *See id.*  As discussed above, these competing views do not amount to securities fraud.

As with the first omission discussed above, Plaintiff also describes this second omission differently in his Letter defending the SAC.  Plaintiff argues in his Letter that "Defendants knew but failed to disclose that *Balto* did not have the capability to create a licensed gaming operator."  Ltr. at 3 (emphasis added).  This version too is based only on the *Kerrisdale Report*, Ex. G at 3, 16-17, and so fails for the same reasons as the alleged omission in Paragraph 67.  Plaintiff also alleges no facts that existed at the time of any challenged statement that support Plaintiff's allegation that Balto (or the Balto Acquisition) could not create a licensed gaming operator—nor does Plaintiff explain it in the Letter.  In any event, the SAC lacks particularized facts explaining how the supposed Balto omission renders any of the challenged statements about fuboTV's sports wagering business—much less the ones Plaintiff identifies (SAC ¶¶ 50-53, 59)—misleading.[6] None of the challenged statements mention Balto's gaming operator abilities (or its number of employees or intellectual property value, SAC ¶ 80, or its website, *id.* ¶ 64), and "it is therefore unclear how these alleged omitted facts render [the challenged] statements false or misleading."  Op. at 28; *see also Ong*, 294 F. Supp. 3d at 233.

---

[6] *See* Ltr. at 3; *see also* SAC ¶¶ 50-51 ("We believe that fuboTV sits firmly at the intersection of three megatrends: the secular decline of traditional TV viewership, the shift of TV ad dollars to connected TVs and online sports wagering, a market which we intend to enter."); 52 ("[W]e are excited to announce that fuboTV intends to expand into the online sports wagering market. Our goal with wagering is to develop a new revenue stream for fuboTV, and one which we believe will be an important contributor to our business."); 53 ("We are also excited about the potential growth and revenue opportunities around our intended expansion into online sports wagering."); 59 ("fuboTV Acquires Balto Sports as First Step Into Online Sports Wagering Market").

Plaintiff also includes an allegation in the SAC that fuboTV misrepresented its Balto Acquisition as a "first move into the online sports wagering market," SAC ¶ 63, given that "Fubo had previously announced a partnership that named FanDuel as its 'exclusive sportsbook, online casino, horse racing and DFS partner.'" *Id.* Plaintiff ignores and seemingly abandons the allegation in his Letter, but regardless, Plaintiff does not (and cannot) dispute that the Balto Acquisition was fuboTV's first *acquisition* to support its online sports wagering strategy, that the prior FanDuel partnership had been terminated, and that the prior FanDuel partnership was "previously announced." *Id.* Such publicly known facts cannot support a securities fraud claim. *See, e.g.*, *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 553 (S.D.N.Y. 2021) (no liability for failing to disclose a "fact readily accessible in the public domain").[7]

**fuboTV Disclosed Risks**. If anything, Plaintiff's two allegedly omitted "facts" (and their rephrased versions) are speculation about the risks facing fuboTV—yet fuboTV expressly "warn[ed] investors of exactly the risk[s] the plaintiff[] claim[s] was not disclosed." *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996). For example, during the BMO Capital Markets 2020 Growth & ESG Conference, fuboTV stated that "no one should think of us as a ... wagering company," SAC ¶ 62, and in a November 10, 2020, letter to shareholders, fuboTV disclosed "risks related to our ability to successfully develop and market a sports wagering offering." Ex. J at 9; *see also* Ex. K at 4 (risks include "those related to FUBO's growth, evolution of our industry, product development and success, including with respect to online wagering").

---

[7] Nor does the fact that after the Class Period (and nearly two years after the challenged statements) fuboTV "announced [a] strategic review" and then ceased operations of Fubo Sportsbook, SAC ¶¶ 98, 100, render any challenged statement misleading, as it does not support "contemporaneous falsity." Op. at 21-22 (citing *Lululemon*, 14 F. Supp. 3d at 580 ("without contemporaneous falsity, there can be no fraud")).

Similarly, in its Registration Statement, fuboTV stated that "[i]f we are unable to increase our advertising revenue by, among other things, continuing to improve our platform's data capabilities to further optimize and measure advertisers' campaigns, increase our advertising inventory and expand our advertising sales team and programmatic capabilities, our business and our growth prospects may be harmed."  Ex. B at 16; *see also id.* ("We are continuously seeking to balance the objectives of our subscribers and advertisers with our desire to provide an optimal user experience, but we may not be successful in achieving a balance that continues to attract and retain subscribers and advertisers."); Ex. A at 6 ("We also face competition for advertisers, which in part depends on our ability to acquire and retain users…. We need to continue to maintain an appropriate advertising inventory for the growing demand for ads on our platform.").

c.    *The Alleged Misstatements Are Puffery Or Otherwise Not Actionable As Pled*

In any event, all of the challenged statements independently should be dismissed because they constitute non-actionable puffery or opinion statements, protected forward-looking statements, or accurate descriptions of fuboTV's performance that are not actionable as pled.

(1)    Many Of The Challenged Statements Are Puffery

Many of the challenged statements—*e.g.*, fuboTV was "increasingly leveraging our data and analytics capabilities to optimize advertisements," had "strong unit economics" and "strong [] growth," made "bold moves," and believed in the synergies of the Balto Acquisition, including as Balto being fuboTV's "first step" into the sports wagering market (*see, e.g.*, SAC ¶¶ 38, 42, 46-48, 50-54, 56-57, 59-62)—are nearly identical to those courts have dismissed as non-actionable "'puffery' *i.e.*, 'optimistic statement[s] that [are] so vague, broad, and non-specific that a reasonable investor would not rely on [them],'" *In re Nokia Corp. Sec. Litig.*, 2021 WL 1199030, at *17 (S.D.N.Y Mar. 29, 2021) (citation omitted); *see Plymouth Cnty. Ret. Ass'n v. Array Techs.,*

14

*Inc.*, 2023 WL 3569068, *10 (S.D.N.Y. May 19, 2023) ("leveraging [its] supply chain and economies of scale to reduce product costs" was inactionable puffery); *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 994-95 (N.D. Cal. 2017) ("strong growth" was inactionable puffery); *Nokia*, 2021 WL 1199030, at *17 ("statements touting the progress of the integration as 'complete' and 'successful' or that the cultural integration 'went beautifully' are 'too general to cause a reasonable investor to rely upon them'") (citation omitted); *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 569-70 (S.D.N.Y. 2018) (statements suggesting "Xerox's confidence in its competitiveness" and "vaguely and enthusiastically describ[ing] Xerox's performance, [and] expectations of business success" were inactionable puffery). In fact, some of challenged statements explicitly reference fuboTV's optimism. *See, e.g.*, SAC ¶ 50 ("Our optimism in the future of fuboTV and the live TV streaming business has never been stronger.").

(2)      Many Of The Challenged Statements Are Opinions

Several of the challenged statements are also non-actionable opinions about fuboTV's market position and competitive strengths—many of which included the qualifier "we believe." *See, e.g., id.* ¶¶ 40, 42, 46-48, 50-54, 56-57, 59-61. Opinions are actionable only if the speaker (1) did not hold the professed belief; (2) supplied "untrue" facts supporting the belief; or (3) failed to disclose "material facts" about his "inquiry into or knowledge concerning" the opinion that "conflict with what a reasonable investor would take from the statement itself." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86, 189 (2015). This is "no small task" to plead (*id.* at 194), and Plaintiff has not done so. Plaintiff offers only contrary short-seller opinions, rather than any particularized allegations about how these opinion statements were false at all (*see supra* Section A.1.b), much less a single allegation that Defendants believed they were false when made. *Tongue v. Sanofi*, 816 F.3d 199, 212 (2d Cir. 2016) (*Omnicare* "does not impose liability" where "Plaintiffs' case essentially boils down to an allegation that the

15

statements were misleading for failure to include a fact that would have potentially undermined Defendants' optimistic projections").

                (3)       <u>Many Of The Challenged Statements Are Forward-Looking Statements Protected By The PSLRA Safe Harbor</u>

Plaintiff also challenges statements about fuboTV's future plans and projections, *see, e.g.*, SAC ¶¶ 36, 38, 40, 48, 50-53, 56-57, 59, 61-62, that fall within the PSLRA's definition of forward-looking statements. *See* 15 U.S.C. § 78u-5(i)(1) (forward-looking statements are projections of (1) revenues and other financial metrics; (2) plans and objectives of management for future operations, including those relating to the products or services of the issuer; (3) future economic performance; and (4) assumptions underlying or relating to such statements). The PSLRA's safe harbor protects a forward-looking statement if *either* (1) it was accompanied by meaningful cautionary language, *or* (2) Plaintiff fails to allege the maker of the statement had actual knowledge that the statement was false or misleading. *Id.* § 78u-5(c)(1)(A)-(B); *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010) ("a defendant is not liable if the forward-looking statement is identified and accompanied by meaningful cautionary language or is immaterial or the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading."). Both prongs of the safe harbor protect fuboTV's statements.

First, as described above, fuboTV's forward-looking statements were accompanied by meaningful cautionary language that "identif[ied] important factors that could cause actual results to differ materially from those in the forward-looking statement" for both advertising and sports wagering. 15 U.S.C. § 78u-5(c)(1)(A)(i); *see supra* at Section A.1.b; *see also* Ex. C at 2 ("[a]lthough fuboTV believes the expectations reflected in such forward-looking statements are

reasonable, fuboTV can give no assurance that such expectations will prove to be correct" and directing readers to prior risk warnings).[8]

Nor has Plaintiff alleged any particularized facts establishing that any Defendant made any statement with *scienter*—much less facts meeting the "stricter" requirement of "knowing falsity," 15 U.S.C. § 78u-5(c),(i); *Slayton*, 604 F.3d at 773; *see infra* Section A.2.  On the contrary, Plaintiff does not allege that *any* Defendant had "actual knowledge" of wrongdoing.

(4)    <u>Many Of The Challenged Statements Are Accurate<br>Statements Of Historical Data</u>

Plaintiff also challenges statements containing accurate historical information.  *See, e.g.*, SAC ¶¶ 36, 39, 41, 50, 63.  Plaintiff does not allege any facts suggesting these reports were inaccurate.  "[I]t is clear that a violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data" or "statements that are true."  *Plumber & Steamfitters Local 773 Pension Fund, Boston Ret. Sys. v. Danske Bank A/S*, 11 F.4th 90, 99 (2d Cir. 2021) (citation omitted); *In re Nokia OYJ (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 393 (S.D.N.Y. 2006) (quoting *In re Bristol-Myers Squibb Sec. Litig.,* 312 F. Supp. 2d 549, 577 (S.D.N.Y. 2004)).

**2.**    <u>Plaintiff Fails To Plead Scienter</u>

The SAC should be dismissed for the independent reason that Plaintiff fails to establish the requisite "strong inference" of scienter—*i.e.*, an "intent to deceive, manipulate, or defraud"—as to

---

[8] Because Plaintiff relies on the fraud-on-the-market theory (*see* SAC ¶ 113), every forward-looking statement was "accompanied by" all of the public cautionary language at the time of the statement.  *See Asher v. Baxter Int'l Inc.,* 377 F.3d 727, 732 (7th Cir. 2004) ("[T]he market for Baxter's stock is efficient, which means that Baxter's cautionary language must be treated as if attached to every one of its oral and written statements."); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988) ("the market price of shares traded on well-developed markets reflects all publicly available information . . . .").

17

*each* Defendant and *each* alleged misstatement. *Tellabs*, 551 U.S. at 319; 15 U.S.C. § 78u-4(b)(2). "To meet the 'strong inference' standard, it is *not* sufficient to set out 'facts from which, if true, a reasonable person *could* infer that the defendant acted with the required intent,' for that gauge 'does not capture the stricter demand Congress sought to convey….'" *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110-11 (2d Cir. 2009) (citing *Tellabs,* 551 U.S. at 314) (emphasis added). Additionally, because the SAC names multiple defendants, "[s]cienter must be separately pled and individually supportable as to each defendant." *C.D.T.S. No. 1*, 2013 WL 6576031, at *6. The SAC improperly relies on "generalized group pleading" that fails "to differentiate in any way" between each Defendants' knowledge. *In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024, at *20 (S.D.N.Y. Oct. 25, 2006). Rather, Plaintiff had to allege as to *each* Defendant particularized facts showing either (i) "motive and opportunity to commit fraud"; or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA and Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). The SAC fails to do either.

Even apart from its fatal group pleading, the SAC again fails to plead motive or opportunity, and "[n]one of [the SAC's allegations], considered individually or together, are sufficient to plead scienter." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *6 (S.D.N.Y. Dec. 16, 2014). "In order to raise a strong inference of scienter through 'motive and opportunity' to defraud, Plaintiff[] must allege that [Defendants] benefitted in some concrete and personal way from the purported fraud." *Id.* at *5 (citation omitted). Plaintiff does not do this, either in the SAC or in the Letter. Indeed, his only motive allegation is against Mr. Gandler, noting that he sold 26 fuboTV shares (1% of his stock) during the Class Period. SAC ¶ 95. This paltry allegation fails as Plaintiff alleges nothing "unusual" about this single trade, and it is too small to

18

suggest scienter. *See Wyche v. Advanced Drainage Sys.*, 710 F. App'x 471, 473 (2d Cir. 2017) (sales not unusual because "the percentage of shares sold was small, the timing was not suspicious, and no other insiders were alleged to have sold stock"); *Acito v. IMCERA Grp.*, 47 F.3d 47, 54 (2d Cir. 1995) (concluding an insider's sale of less than 11% of his holdings did not support an inference of bad faith and scienter).

When, as here, Plaintiff fails to establish motive, his allegations of conscious misbehavior or recklessness as to each Defendant "must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). But Plaintiff fails to plead either conscious misbehavior or recklessness as to any Defendant. To plead conscious misbehavior or recklessness, Plaintiff must allege with particularity that *each* Defendant either engaged in (i) "deliberate illegal behavior," *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000), or (ii) conduct that was "highly unreasonable and [] represent[ed] an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it," *Sinay v. CNOOC Ltd.*, 2013 WL 1890291, at *7 (S.D.N.Y. May 6, 2013) (citation omitted). Plaintiff comes nowhere close to meeting this heavy burden.

Plaintiff generically alleges that "Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading" because of their "receipt of information" and their "associations with the Company which made them privy to confidential proprietary information concerning Fubo." SAC ¶¶ 120-23. Courts routinely reject arguments that defendants must have known their public statements were misleading "because they held management roles" or had "access to information." *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Com.,* 694 F. Supp. 2d 287, 298 (S.D.N.Y. 2010) ("[A]ccusations founded on nothing more than a defendant's corporate

position are entitled to no weight."); *Yukos Oil*, 2006 WL 3026024, at \*20 (allegations that defendants had "access to information are insufficient as a matter of law to establish … conscious misbehavior or recklessness"). Nor does Plaintiff's passing allegation that Defendants signed SEC filings suffice (SAC ¶¶ 37, 43, 58). *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 807 (S.D.N.Y. 2020) (no scienter "based on the signing of a certification without alleging any facts to show a concomitant awareness of or recklessness to the materially misleading nature of the statements") (citation omitted). The same is true of the post-Class Period statements about fuboTV's "strategic review" and eventual cessation of the wagering business' operations (SAC ¶¶ 98, 100). *In re Diebold Nixdorf, Inc. Sec. Litig.*, 2021 WL 1226627, at \*14 (S.D.N.Y. Mar. 30, 2021) (post-class period statements fail to show "a concomitant awareness of or recklessness to the materially misleading nature of the statements") (citation omitted); *Novak*, 216 F.3d at 309 (cannot establish strong inference of scienter using "fraud by hindsight"). All of these assertions fail because they do not show that Defendants possessed contemporaneous information that contradicted the challenged statements. *See Lululemon*, 14 F. Supp. 3d at 580 (no scienter where complaint lacked "specific factual allegations" suggesting "if, when, or how . . . any of the makers of the statements knew" any contrary information).[9]

Plaintiff's only individualized allegations likewise fail to support a strong inference of scienter. CW #1 notes that Mr. Gandler was "hands-on," "attended meetings," and "involve[d] in the day-to-day affairs of the Company," SAC ¶ 125, but this Court already held that CW #1's

---

[9] Nor does an unrelated insider trading charge against Mr. Bronfman from over a decade ago support a strong inference of scienter. SAC ¶ 126. It does not even relate to fuboTV, let alone (1) the fuboTV statements at issue, or (2) Mr. Bronfman's awareness that any of those statements were false. 15 U.S.C. § 78u-4(b)(2) ("The complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.").

allegations must be disregarded.  Op. at 21-22.  Indeed, the SAC fails to allege what supposedly contradictory information Mr. Gandler learned at these meetings or through his involvement. None of these allegations show that Mr. Gandler had any information "highlighting the falsity of public statements."  *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011).  In any event, Plaintiff provides none of the detail—*i.e.*, who communicated the information, when it was communicated, how it was communicated—required by courts to credit such CW allegations for scienter purposes.  *See Campo v. Sears Holdings Corp.*, 371 F. App'x. 212, 217 (2d Cir. 2010) (confidential witness allegations that executives had access to certain reports could not plead scienter when the witness "had no knowledge of whether [individual defendants] actually accessed or reviewed the reports").

Likewise, the SAC alleges that "Defendant Gandler shared frequent reports of subscriber growth and had access to software like Datadog, which tracked the user and subscriber data."  SAC ¶ 123.  But Plaintiff does not point to any CW allegation suggesting Gandler shared reports or accessed software, or even that any such reports or data existed.  To the extent the allegation is "made on information and belief," it had to be supported by particular facts, 15 U.S.C. § 78u-4(b)(1)—which it is not.  Moreover, even if there were any reports or data, the SAC also fails to allege their content.  Nothing in the SAC points to any content that "*contradicted* Defendants' public statements," *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021) (emphasis added), much less that Gandler knew any such information or had it available to him, *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 813 (S.D.N.Y. 2018) (Carter, J.); *Lululemon*, 14 F. Supp. 3d at 580.

Plaintiff asserts for the first time in his Letter that CW #1 "revealed that Defendant Gandler admitted that Fubo cannot provide content providers the user data they craved due to technological

21

and backend limitations." Ltr. at 3. But nowhere in the SAC does Plaintiff make such an allegation, as Plaintiff admits by failing to cite any SAC allegation in support.

### 3.    Plaintiff Fails To Plead Loss Causation

Plaintiff's SAC must be dismissed for the independent reason of failing to plausibly plead loss causation. The SAC still fails to allege any "corrective" disclosure of a previously concealed "truth" that caused fuboTV's stock price to decline. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43, 347 (2005). Instead, the SAC relies on the same short-seller and analyst reports as the AC, SAC ¶¶ 68-86, and in the Letter, Plaintiff argues only that the *Kerrisdale Report* supposedly revealed "Defendants' misstatements and omissions," Ltr. at 3. But neither the *Kerrisdale Report* nor any of the other short-seller and analyst reports support loss causation.

First, the *Kerrisdale Report* did not discuss the alleged omission relating to fuboTV's supposed lack of "technical capability" to collect and utilize customer data for advertising. Op. at 26. Instead, the *Kerrisdale Report* opined that fuboTV did not "have any data or inventory that is differentiated [from its competitors] and cannot provide the reach many advertisers crave." *See Ex.* G at 3; *see also id.* at 19 ("Fubo is no different from every other distributor in the world and Hulu+ Live, DTV, Comcast, and Charter"). And this report, like the others Plaintiff cites, are "negative journalistic characterization[s] of previously disclosed facts" and "do[] not constitute a corrective disclosure of anything but the journalists' opinions." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010). Courts in this Circuit routinely hold that, as here, "publications that merely characterize information already circulating in the public sphere in a negative way cannot prove loss causation." *In re Arcimoto Inc., Sec. Litig.*, 2022 WL 17851834, at *6 (E.D.N.Y. Dec. 22, 2022); *see also In re EHang Holdings Ltd. Sec. Litig.*, 2022 WL 17718546, at *12 (S.D.N.Y. Dec. 15, 2022) (plaintiffs failed to allege loss causation based on a short-seller report that did not reveal any undisclosed fact related to the challenged statements);

22

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 & n.4 (2d Cir. 2005) (downgrades of stock do not reveal falsity of the prior recommendations).

As for Balto, neither the *Kerrisdale Report* nor any of the other cited reports revealed any new information about Balto's status as a startup company. *See supra* Section A.1.b. *Compare* SAC ¶ 80, *with* Ex. G at 3, 18; Ex. I at 5. Instead, the short-seller reports disclosed the authors' sensationalized (and self-interested) opinions, *see supra* Section A.1.b, which, "standing alone, cannot 'reveal to the market the falsity' of a company's prior factual representations." *Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (third-party's negative opinions "are not 'corrective' for the purpose of pleading loss causation").[10]

## B.    The SAC Fails To Plead A Section 20(a) Claim

Plaintiff fails to plead the Individual Defendants' liability under Section 20(a). Just as the Court held in the Order:

> As Plaintiff has failed to adequately allege his § 10(b) claim, his claim under § 20(a) fails as a matter of law. Section 20(a) requires a predicate violation of the Exchange Act, which the AC does not adequately plead. *See S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997) ("plaintiff must show a primary violation by the controlled person and control of the primary

---

[10] In the Letter, Plaintiff does not rely on the post-Class Period statements for loss causation. Ltr. at 3. And rightfully so. Plaintiff's alleged losses cumulating on January 4, 2021, SAC ¶ 86, could not have been caused by post-Class Period statements made months and years later, *id.* ¶¶ 90, 93-94, 96-101. *See Lighthouse Fin. Group v. Royal Bank of Scotland Group, PLC*, 2013 WL 4405538, at *10 (S.D.N.Y. Aug. 5, 2013) (a post-class period revelation "cannot be a corrective disclosure sufficient to establish loss causation"); *Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 243-44 (S.D.N.Y. 2006) (failure to plead a corrective disclosure during class period is failure to allege loss causation). And Plaintiff does not even allege that these statements revealed a "truth" that caused any stock drop at all, as required to plead loss causation. *See Lentell*, 396 F.3d at 173 (complaint must allege "the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security."). For these post-Class Period statements, Plaintiff also only alleges a stock price decline on March 3, 2021 but does not allege the drop related to any alleged truth being revealed. SAC ¶ 90.

violator by the targeted defendant"); *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 139 (2d Cir. 2011).

Op. at 29.  Here, again, Plaintiff does not plead a single primary violation.  *See supra* Section A.

Plaintiff also fails to plead any particularized facts showing Messrs. Gandler, Bronfman, or Nardi's "culpable participation"—*i.e.*, particularized facts showing that each of them "knew or should have known that the primary violator [here, fuboTV], over whom that person had control, was engaging in fraudulent conduct."  *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 322 (S.D.N.Y. 2021) (citation omitted).

## C.    The SAC Should Be Dismissed With Prejudice

"While, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, 'leave to amend shall be freely given when justice so requires, it is within the sound discretion of the district court to grant or deny leave to amend … for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'"  *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotations and citation omitted).  "Because Plaintiff is counseled and has already had an opportunity to amend in face of similar arguments from Defendants" the Court should dismiss the claims with prejudice.  *Cavello Bay Reinsurance Ltd. v. Stein*, 2020 WL 1445713, at *11 (S.D.N.Y. Mar. 24, 2020) (internal citations omitted) (dismissing with prejudice); *see also Elek v. Inc. Village of Monroe*, 815 F. Supp. 2d 801, 810 n.8 (S.D.N.Y. 2011) ("[B]ecause Plaintiff's second bite at the apple has proven fruitless, the Court dismisses this [A]ction" with prejudice (collecting cases)); *In re Worldcom, Inc. Sec. Litig.*, 2004 WL 2889974, at *8 (S.D.N.Y. Dec. 15, 2004) ("Under Rule 15(a) plaintiffs have no right to amend their pleadings a second time." (citation and quotation marks omitted)).  The SAC should be dismissed with prejudice.

## CONCLUSION

For the reasons stated, the Court should enter an order dismissing the SAC with prejudice.

24

Dated: August 1, 2023
    New York, NY

Respectfully Submitted,

**LATHAM & WATKINS LLP**

/s/ Andrew B. Clubok
Andrew B. Clubok
Susan E. Engel
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: andrew.clubok@lw.com
      susan.engel@lw.com

Nicholas J. Siciliano (*pro hac vice*)
Kathryn K. George (*pro hac vice*)
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
Email: nicholas.siciliano@lw.com
      kathryn.george@lw.com

*Attorneys for Defendants*

25