**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE FUBOTV INC. SECURITIES LITIGATION | Case No. 1:21-cv-01412 (ALC) (JLC) <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND**
**AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT.......................................................................................................................1

     A.     The SAC Is An Improper Puzzle Pleading ...............................................1

     B.     The SAC Fails To Identify Any False Or Misleading Statement ...........................2

     C.     The Alleged Misstatements Are Puffery Or Otherwise Not Actionable .................5

     D.     Plaintiff Fails To Plead Scienter .............................................................8

     E.     Plaintiff Fails To Plead Loss Causation..............................................................10

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*C.D.T.S. No. 1 v. UBS AG*,
2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013) ........................................................................ 3, 4

*City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Ryanair Hldgs. PLC*,
2020 WL 2834857 (S.D.N.Y. June 1, 2020) ............................................................................ 5

*City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012).................................................................................... 10

*Cox v. Blackberry Ltd.*,
660 F. App'x 23 (2d Cir. 2016) ............................................................................................... 9

*Das v. Rio Tinto PLC*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018).................................................................................... 9

*Emps.' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*,
794 F.3d 297 (2d Cir. 2015)..................................................................................................... 3

*Greco v. Qudian Inc.*,
2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022).......................................................................... 3

*In re AT&T/DirecTV Now Sec. Litig.*,
480 F. Supp. 3d 507 (S.D.N.Y. 2020)...................................................................................... 6

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004)...................................................................................... 6

*In re Doral Fin. Corp. Sec. Litig.*,
563 F. Supp. 2d 461 (S.D.N.Y. 2008)...................................................................................... 3

*In re Ehang Hldgs. Ltd. Sec. Litig.*,
2022 WL 17718546 (S.D.N.Y. Dec. 15, 2022) ....................................................................... 9

*In re Federated Dep't Stores, Inc. Sec. Litig.*,
2004 WL 444559 (S.D.N.Y. Mar. 11, 2004) ......................................................................... 10

*In re Inv. Tech. Grp. Sec. Litig*,
251 F. Supp. 3d 596 (S.D.N.Y. 2017)...................................................................................... 5

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)........................... 2

*In re Supercom Inc., Sec. Litig.*,
   2018 WL 4926442 (S.D.N.Y. Sept. 10, 2018)..........................................................................9

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   625 F. Supp. 3d 164 (S.D.N.Y. 2022)......................................................................................7

*In re UBS AG Sec. Litig.*,
   2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)........................................................ 5, 6, 7, 8, 9, 10

*In re Veeco Instruments Sec Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006) .............................................................................................4

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
   504 F. Supp. 3d 224 (S.D.N.Y. 2020).....................................................................................7

*Lopez v. CTPartners Exec. Search, Inc.*,
   173 F. Supp. 3d 12 (S.D.N.Y. 2016).......................................................................................6

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
   709 F.3d 109 (2d Cir. 2013)....................................................................................................4

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015).................................................................................................................7

*Villare v. Abiomed, Inc.*,
   2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021).........................................................................8

*Zecher v. Vince Holding Corp.*,
   2020 WL 6370264 (E.D.N.Y. Apr. 14, 2020) .........................................................................3

**STATUTES**

15 U.S.C. § 78u-5(c)(1)(A)-(B) .................................................................................................. 7, 8

**INTRODUCTION**

This Court dismissed the AC, yet the SAC repeats the same allegations, and now, in his Opposition ("Opp."), Plaintiff recycles the same arguments the Court already rejected. Plaintiff argues the SAC is not a puzzle pleading but still presents nearly thirty paragraphs of allegedly false or misleading statements followed by two "pro forma reasons why the statements quoted are allegedly false." Opinion and Order ("Op.") at 22. Like last time, this pleading tactic fails to "demonstrate with specificity *why*" any particular statement is false or misleading. *Id.* at 24 (emphasis added). As to falsity, Plaintiff again argues that fuboTV supposedly misled investors about sharing user data for targeted advertising—but ignores that the Court already recognized that fuboTV said nothing about sharing user data and neither did Plaintiff's purportedly "corrective" disclosure (*i.e.*, the *Kerrisdale* Report). Op. at 26. Plaintiff again invokes CW #1— who left fuboTV before the Class Period—but ignores this Court's ruling that "it is not likely CW #1 has any information that could support an inference of 'contemporaneous falsity,'" Op. 21. And perhaps worst of all, Plaintiff still has no answer to the complete absence of any particularized allegation suggesting that any Defendant acted with scienter. Indeed, Plaintiff barely mentions two of the Individual Defendants and presents only conclusory assertions insufficient to meet the PSLRA's heavy pleading burden about the third (Gandler). Plaintiff should have amended the AC only if he had an evidentiary or legal basis to do so. His Opposition confirms he does not. The SAC should be dismissed with prejudice for failure to plead falsity, scienter, and loss causation.

**ARGUMENT**

A.    **The SAC Is An Improper Puzzle Pleading**

Plaintiff insists that he has addressed the Court's prior puzzle pleading ruling because he "narrow[ed]" the SAC to two sets of statements, Opp. at 1, but the SAC still follows the puzzle pleading playbook the Court already rejected. Plaintiff again pairs long quotes with a "generalized

explanation[] of how the statements were false or misleading"—which is "not sufficient to satisfy the heightened pleading requirements." Op. at 22. To this end, Plaintiff chides Defendants for citing *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015), asserting that *Lululemon* "does not even address" puzzle pleading. Opp. at 10. Plaintiff ignores, however, that *the Court* relied on *Lululemon* to highlight why the AC fell short: Plaintiff had to "do more than simply assert that a statement is false—[he] must demonstrate with specificity *why* that is so." Op. at 24 (quoting *Lululemon*, 14 F. Supp. 3d at 571). But the SAC still "does not with any particularity attempt to *connect* the vast majority of the challenged statements with the alleged omitted material facts," *id.* (emphasis added). Rather, Plaintiff "group[s] the challenged statements into [] categories corresponding to one of the alleged adverse facts," which the Court already found insufficient. *Id.*; *see also* SAC ¶¶ 66-67.

**B.     The SAC Fails To Identify Any False Or Misleading Statement**

**Proprietary Data and Advertising.** This Court has already rejected Plaintiff's CW #1-based and *Kerrisdale*-based allegations, holding that neither suggested that the challenged statements were false or misleading. Op. at 24-26. Plaintiff ignores the Court's ruling—repeating the same allegations in the SAC and now making similar arguments in Opposition. SAC ¶¶ 67, 75-79; Opp. at 3-5. Not surprisingly then, Plaintiff's claim fails for the same reasons as before: neither purported omission renders any statement false or misleading. Op. at 26.

Plaintiff insists that *Kerrisdale* and CW #1 supposedly show that fuboTV had technical limitations in collecting "*enough lucrative* data that could be shared with content providers for targeted advertising." Opp. at 4, 11 (emphasis added). But as the Court already held, none of the challenged statements say anything about sharing data with content providers—and they also do not discuss the extent of data fuboTV collected, let alone whether it was "lucrative" enough to share for targeted advertising. Op. 25-26.

2

Even if the challenged statements did concern these topics, Plaintiff's claim still fails because the SAC contains no particularized facts supporting the alleged omission: that fuboTV lacked the technical ability to collect enough data to share for targeted advertising during the Class Period (or at any time). This Court already rejected Plaintiff's reliance on *Kerrisdale*, because it "does not state anything about the Company sharing user data or about targeted advertising." Op. at 26. It also says nothing about fuboTV's ability to collect data. Rather, it is an "ex post facto report[]" "criticizing" fuboTV's business and is "insufficient to support an inference of falsity at the time the alleged statements were made." *C.D.T.S. No. 1 v. UBS AG*, 2013 WL 6576031, at *4 (S.D.N.Y. Dec. 13, 2013); *see also Zecher v. Vince Holding Corp.*, 2020 WL 6370264, at *9 (E.D.N.Y. Apr. 14, 2020) (disagreement with company does not support falsity).

Likewise, the Court already rejected Plaintiff's reliance on CW #1. Op. at 25-26. While Plaintiff now argues that CW #1 remembered "a lot of conversations about" targeted advertising, he alleges no detail. The SAC does not allege *when* these conversations allegedly occurred, *who* participated, or even *what* was said. SAC ¶ 76. Plaintiff has no answer to Defendants' argument that these allegations are "so vague as to be meaningless." Mot. at 10 (citing *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008)). Moreover, as the Court already explained, CW #1 "was not at the Company during the Class Period." Op. at 25. Plaintiff argues this timing "does not automatically disqualify" CW #1's allegations, citing the Second Circuit's decision in *Emps.' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 307 (2d Cir. 2015). Opp. at 11. But the Court already recognized that there is no automatic bar, even citing the same decision. Op. at 21.[1] Plaintiff *still* offers no facts making it "likely" that CW #1 had any

---

[1] Plaintiff's other cited cases are all distinguishable. In *Greco v. Qudian Inc.*, the court found that a former employee described with sufficient particularity his personal involvement in a banking

information about fuboTV's technical advertising capabilities that is plausibly relevant to statements made after CW #1 left the Company—and throughout the two-year-long Class Period. *Id.* Indeed, it is *implausible* that CW #1 had *relevant*, as opposed to *stale*, information about fuboTV's ability to increase advertising revenues, given that advertising revenues were $12.5 million for all of 2019 before CW #1 left in February 2020, but then *doubled* during the Class Period to $24.9 million by the end of 2020 and then *tripled* to $73.7 million in 2021. Ex. B at 1, Ex. L at 43, Ex. M at 53. Plaintiff alleges no facts suggesting that fuboTV's technical advertising abilities remained the same for months and years after CW #1 left the Company, and fuboTV's advertising revenues preclude any inference otherwise.[2]

**Balto.** Plaintiff ignores Defendants' argument that parroting critiques from short-seller reports does not "support an inference of falsity at the time the alleged statements were made." *C.D.T.S. No. 1*, 2013 WL 6576031, at *4. Instead, Plaintiff cites *more negative opinions* from the *Kerrisdale* and *Lightshed* reports, ones that the SAC does not even cite. Opp. at 13. For example, Plaintiff argues that fuboTV's "bullish pronouncements about how 'instrumental' the Balto acquisition was in executing Fubo's sports wagering strategy conveyed a misimpression that could only be tempered with the truth about Balto's defunct operations." Opp. at 14. But Plaintiff's alleged *truth* is based entirely on the short-seller negative opinions and are thus not well-pled facts.

---

practice that the court could infer continued after he left. 2022 WL 4226022, at *12-13 (S.D.N.Y. Sept. 13, 2022). And Plaintiff's other cases all involved CWs employed *during* the class period. *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 123–24 (2d Cir. 2013) (CW worked at defendant corporation during the class period); *In re Veeco Instruments Sec Litig.*, 235 F.R.D. 220, 229 (S.D.N.Y. 2006) (same).

[2] Plaintiff asserts that advertising revenues declined as a percentage of fuboTV's overall revenues after the Class Period but doesn't say why such post-Class Period percentages matter, particularly given Plaintiff's concession that advertising revenues *increased during* the Class Period (and significantly so). Even advertising revenues as a percentage of overall revenues increased, from 8% in 2019 to 11.4% in 2020 to 11.7% in 2021. Ex. B at 1, Ex. L at 43, Ex. M at 53.

Mot. at 11-12; *City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Ryanair Hldgs. PLC*, 2020 WL 2834857, at *7 (S.D.N.Y. June 1, 2020) (negative analyst opinions did not support falsity).[3]  In any event, Plaintiff's purported "truth" does not render any statement misleading.  He argues the short-seller reports "revealed" that Balto had just three employees, a "failed test product" and "mothballed operations during the pandemic."  Opp. at 13.  But none of the challenged statements suggested Balto was anything other than a small business—indeed, fuboTV itself *emphasized* that Balto was a "small" operation.  SAC ¶ 61.  Nor did fuboTV say anything about Balto's test product or suggest Balto had ongoing pandemic operations, and so these "facts" would not render any statement false or misleading.

Furthermore, Plaintiff cannot save his claim by noting that fuboTV shut down its sportsbook operation *two years after* the Class Period.  Opp. at 14.  Plaintiff alleges no contemporaneous facts suggesting that any Defendant believed the sportsbook business would not succeed—and "without contemporaneous falsity, there can be no fraud."  Op. at 21-22.

## C.      The Alleged Misstatements Are Puffery Or Otherwise Not Actionable

**Puffery.** Plaintiff ignores and thereby concedes two statements are puffery.  Mot. at 14 (citing SAC ¶¶ 38, 42); *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012).  For the other fourteen statements, Plaintiff seemingly concedes they contain puffing language but claims they are "cherry-pick[ed] irrelevant snippets."  Opp. at 18.  But the supposedly cherry-picked language—*e.g.*, the Balto acquisition was a "first step" and "bold move"—is precisely the language that the SAC is *challenging*.  Opp. at 13 (criticizing as "fanfare" Defendants' "bullish pronouncements").  Courts routinely hold that this type of "fanfare" is

---

[3] Plaintiff's case is inapposite as the omitted information in *In re Inv. Tech. Grp. Sec. Litig.* was not short-seller negative opinions.  251 F. Supp. 3d 596, 610-12 (S.D.N.Y. 2017).

5

puffery.  *See, e.g.*, *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 523-24 (S.D.N.Y. 2020) (statement that company was "so excited about" product was puffery).  Nor are the challenged statements "verifiable" simply because they relate to leveraging user data or Balto. Opp. at 17-18.  Rather, statements about "optim[izing]" advertising revenue (SAC ¶ 38) or the "instrumental" nature of the Balto deal (*id.* ¶ 59) are precisely the types of "optimistic statement[s] that [are] so vague, broad, and non-specific that a reasonable investor would not rely on [them]," *i.e.*, statements not "capable of objective verification."  Op. at 28.

Plaintiff also argues the Balto statements cannot be puffery because analysts and fuboTV's stock price responded favorably.  Opp. at 18-19.  But the same could be said for any positive statement.  *See Lopez v. CTPartners Exec. Search, Inc.*, 173 F. Supp. 3d 12, 29 (S.D.N.Y. 2016) (stock price reaction did not render puffery statements actionable).  And Plaintiff's argument that Defendants' positive statements—including about advertising revenue and leveraging user data— concealed adverse revenue results is simply wrong—and the SAC does not allege it.  Indeed, fuboTV publicly disclosed that its advertising revenues doubled during the Class Period (and increased *six-fold* from 2019 to 2021).  *See* Ex. B at 1, Ex. L at 43, Ex. M at 53.

**Opinion.**  Plaintiff ignores and therefore concedes twelve statements are inactionable opinions.  Mot. at 15 (citing SAC ¶¶ 40, 42, 47-48, 50-53, 56-57, 59-60); *UBS*, 2012 WL 4471265, at *11.  As for the remaining three, Plaintiff argues without support that one is a statement of present fact instead of an opinion.  Opp. at 20 (citing SAC ¶ 54).  But Courts hold that statements like "advertising sales" "clearly play[] an important role in margin expansion" are opinions.  *See In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 559 (S.D.N.Y. 2004) ("importan[ce]" of new drug non-actionable opinion).  While Plaintiff concedes the other two statements are

6

opinions,[4] Plaintiff misstates the *Omnicare* standard.  It's not enough to point to supposedly omitted facts "cutting the other way;" instead, Plaintiff had to identify "particular (and material) facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading."  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015).  Plaintiff alleges none of this.  He identifies no facts about any Defendants' inquiry into or knowledge about the opinions, let alone that any Defendants knew of (and omitted) material facts that conflicted with what a reasonable investor would take from the statements.

**Forward-Looking**.  Plaintiff ignores and thereby concedes twelve of the thirteen statements Defendants identified are forward-looking.  Mot at 16 (citing SAC ¶¶ 36, 38, 40, 48, 50-53, 56-57, 61-62); *UBS*, 2012 WL 4471265, at *11.  As to the remaining statement, the mere fact that it uses present tense verbs does not, as Plaintiff suggests, mean it is not forward looking—as its full text makes clear:  *e.g.*, "one of our goals with wagering *is* to," *Compare* SAC ¶ 59, *with* Opp. at 15 (citing SAC ¶ 59); *see also In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 254 (S.D.N.Y. 2020) (discussion of goals "necessarily a forward-looking statement").

Plaintiff also contends the safe harbor is "inapplicable" because he challenges "omissions," not statements.  Opp. at 15.  The PSLRA itself refutes this argument, as the safe harbor applies to the "*omission of a material fact necessary to make the statement not misleading*."  15 U.S.C. § 78u-5(c)(1)(A)-(B) (emphasis added).  And Plaintiff concedes he challenges supposedly "false and misleading statements."  Opp. at 3; *see also In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 217 (S.D.N.Y. 2022) (rejecting same argument).

Beyond these threshold flaws, Plaintiff is also wrong that meaningful cautionary language

---

[4] Plaintiff omits "we believe" and "we think" in each statement.  *Compare* SAC ¶ 46 ("We *believe* a significant opportunity. . .") (emphasis added), and *id.* ¶ 61 (describing "things that *we think* are going to allow us to really build something compelling") (emphasis added), *with* Opp. at 20.

did not accompany the forward-looking statements.  Mot. at 13-14.  Plaintiff calls the Company's warnings "generalized" and "boilerplate," but they are the exact opposite, including specific warnings about "risks related to our ability to successfully develop and market a sports wagering offering," *id*. at 13 (quoting Ex. J at 9), and risks related to fuboTV's ability to increase advertising revenue by "improv[ing] our platform's data capabilities," *id.* at 14 (quoting Ex. B at 16).

In any event, the forward-looking statements are not actionable for the independent reason that Plaintiff alleges no facts showing "actual knowledge that the statement [] was false or misleading."  15 U.S.C. § 78u-5(c)(1)(B); Mot. at 16-17.  Plaintiff concedes as much, relegating this issue to a footnote, and even there, asserting only that CW #1 "bolsters Plaintiff's allegations that Defendants had 'actual knowledge'" that statements about leveraging user data were false and misleading.  Opp. at 17 n.14; *see also Villare v. Abiomed, Inc.*, 2021 WL 4311749, at *17 (S.D.N.Y. Sept. 21, 2021) (plaintiff "concedes the issue" by asserting actual knowledge without support).  But CW #1 never mentions Nardi or Bronfman, and as to Gandler, notes only that he was "hands-on" and attended unspecified pre-Class Period meetings.  SAC ¶ 125.  Nowhere does CW #1 (or Plaintiff) allege particularized facts showing that any Defendant made statements with actual knowledge of falsity.

**Accurate Statements of Historical Fact**. Plaintiff ignores and therefore concedes that fuboTV's accurate historical information is not actionable.  Mot. at 17 (citing SAC ¶¶ 36, 39, 41, 50, 63); *UBS*, 2012 WL 4471265, at *11.

### D.    Plaintiff Fails To Plead Scienter

The SAC does not establish a "strong inference" of scienter as to *each* Defendant and *each* alleged misstatement.  Mot. at 17-18.  The Opposition does not discuss Nardi at all, except to note that he is a Defendant and assert he was a control person.  Opp. at 1, 25 n.18.  Plaintiff barely mentions Bronfman either, at most alleging he signed one annual report and was supposedly a

8

control person. *Id.* at 3, 25 n.18. And as for Gandler, Plaintiff does not argue and thus concedes he had no motive. *UBS*, 2012 WL 4471265, at *11.

Likewise, courts have repeatedly rejected the same arguments Plaintiff asserts about why Gandler possessed scienter. For example, Plaintiff claims that Gandler attended meetings "where the problems at issue were discussed," but Plaintiff does not support this assertion with any (much less particularized) facts. Opp. at 22. And even if the SAC did "plac[e] Gandler at [such] meetings," that still falls far short of alleging that Gandler "actually possessed information contradicting [his] public statements." *Cox v. Blackberry Ltd.*, 660 F. App'x 23, 25 (2d Cir. 2016); *see also Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 813 (S.D.N.Y. 2018) (Carter, J.) (plaintiff had to allege "[1] *specific contradictory information* was available to the defendants [2] at the same time they made their misleading statements") (emphasis added).

Instead, Plaintiff asks the Court to eviscerate the scienter requirement by relying on Defendants' "bullish pronouncements" as purportedly evidencing Defendants' knowledge of "adverse facts contradicting their enthusiastic views." Opp. at 21. That is not the law. Assertions that Defendants knew or must have known the falsity of their public statements are "insufficient to plausibly allege either recklessness or conscious misbehavior" because they failed to allege "'concrete allegations' as to each Individual Defendants' particular knowledge." *In re Ehang Hldgs. Ltd. Sec. Litig.*, 2022 WL 17718546, at 11 (S.D.N.Y. Dec. 15, 2022). Nor can Plaintiff rely on the core operations doctrine or the supposed temporal proximity of certain of the later-in-time challenged statements to *Kerrisdale*'s negative opinions. Opp. at 22-23. Neither supports a strong inference of scienter standing on its own. *In re Supercom Inc., Sec. Litig.*, 2018 WL 4926442, *31-32 (S.D.N.Y. Sept. 10, 2018). And even as a supplement, the core operations doctrine is of no help to Plaintiff for the reason stated above—he does not allege any "contradictory facts of

9

critical importance to the company either were apparent, or should have been apparent." *City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 371 (S.D.N.Y. 2012). In fact, the SAC alleges neither advertising revenue nor Balto were core operations. Opp. at 12-13 (advertising revenue only 10% of fuboTV's total revenues and Balto "inconsequential"); *see, e.g.*, *In re Federated Dep't Stores, Inc. Sec. Litig.,* 2004 WL 444559, at *5 (S.D.N.Y. Mar. 11, 2004) (problems related to 10% of company's operations not core). And the temporal proximity of *short sellers' opinions* to certain alleged misstatements does not support an inference that *Defendants* knew *contrary facts*.

### E. Plaintiff Fails To Plead Loss Causation

As Defendants explained, the short-seller and analyst reports were not "corrective disclosures" because they did not reveal any new facts to the market. Mot. at 22-23. In his Opposition, Plaintiff insists that *Kerrisdale* did reveal "new, material" information, because it "alerted investors" to fuboTV's supposed "difficulties in segregating user data for advertisers" and the "inconsequential" nature of the Balto acquisition. Opp. at 24. This argument fails. Neither the SAC nor *Kerrisdale* mentions "segregating user data" at all, so that information cannot be new, let alone "corrective." And *Kerrisdale*'s opinion that the Balto acquisition was "inconsequential," Op. at 24, shows that the report merely contained negative opinions rather revealed previously concealed, material facts. *See* Mot. at 22-23; Ex. G at 22.

### CONCLUSION

For the above reasons and in the Motion, the SAC should be dismissed with prejudice.[5]

---

[5] Plaintiff concedes that if his 10(b) claim is dismissed that his 20(a) claim also fails. Opp. at 25 n.19; *UBS*, 2012 WL 4471265, at *11.

Dated: October 5, 2023
     New York, NY

Respectfully Submitted,

**LATHAM & WATKINS LLP**

/s/ Andrew B. Clubok
Andrew B. Clubok
Susan E. Engel
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: andrew.clubok@lw.com
     susan.engel@lw.com

Nicholas J. Siciliano (*pro hac vice*)
Kathryn K. George (*pro hac vice*)
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
Email: nicholas.siciliano@lw.com
     kathryn.george@lw.com

*Attorneys for Defendants*