USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/28/2024

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re FuboTV Inc. Securities Litigation.

21-cv-01412 (ALC)

Order

---

**ANDREW L. CARTER, United States District Judge:**

Plaintiff Nordine Aamchoune, individually and on behalf of a class of persons or entities who purchased or otherwise acquired common shares of FuboTV stock, brings this action against Defendants FuboTV ("Fubo" or "Company"), David Gandler ("Gandler"), Edgar M. Bronfman Jr. ("Bronfman"), and Simone Nardi ("Nardi") (collectively "Individual Defendants" and together with Fubo, "Defendants") alleging violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder (Count I), and Section 20(a) of the Exchange Act (Count II). This Court granted Defendants' prior motion to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) without prejudice on March 30, 2023. *In re FuBoTV Inc. Sec. Litig.*, No. 21-cv-01412 (ALC), 2023 U.S. Dist. LEXIS 55624 (S.D.N.Y. Mar. 30, 2023); ECF No. 42. Plaintiffs filed their Second Amended Complaint on May 22, 2023, which Defendants moved to dismiss pursuant to Rule 12(b)(6) on August 1, 2023. ECF Nos. 45, 51. For the reasons stated below, Defendants' Motion is **GRANTED**.

## BACKGROUND

For a more fulsome recitation of the broader facts, the Court refers readers' attention to its prior Opinion dismissing Plaintiffs' prior Amended Complaint. *In re FuBoTV Inc. Sec. Litig.*

*v. Sec. Litig.*, No. 21-cv-01412 at 3-26.  Only those facts relevant to the Court's decision and those highlighting Plaintiffs' amendments to its Complaint are provided here.

I.  **Plaintiffs' Case**

The Second Amended Complaint ("SAC") argues that Defendants knowingly failed to disclose information which misled investors on two significant areas of Fubo's business, namely: (i) Fubo's inability to differentiate its "user data and inventory to allow [the Company] to achieve its long-term advertising growth goal;" and (ii) Fubo's inability to "successfully compete and perform as a sports book operator since it lacked the capabilities and resources needed" to succeed in that business.  Complaint at ¶ 7.  Plaintiffs argue that Defendants' allegedly misleading statements caused the Company's stock price to decline.  *Id.*

The SAC presents a narrower case and pairs down much of the AC's evidentiary sources and presentation of alleged misstatements.  Plaintiffs removed statements made by CW #2 and #3 but retained CW #1's allegations with some additional attributed quotations.  *See* Second Amended Compl. ¶¶ 76-77, 79, 125, 140 (stating for the first time in the SAC that CW #1 "participated in [Company] contract meetings" with senior executives including a named "Senior Vice President" and "remember[s] a lot of conversation about" target advertisers) (hereafter "SAC").  Plaintiffs also removed references to statements included in the Company's March 2020 8-K filing press release, Amended Compl. ¶ 39 (hereafter "AC"), April 2020 merger press release, *Id.* ¶ 40, May 2020 post-merger shareholder letter *Id.* ¶ 41, Q1 2020 10-Q Report and associated press release, *Id.* ¶¶ 47-49, Q2 2020 10-Q Report, *Id.* ¶¶ 51-52, S-1 Registration Prospectus Summary, *Id.* ¶¶ 60-61, and November 10 shareholder letter and earnings call, *Id.* ¶¶ 67-68, 72.  Finally, Plaintiffs included some explanatory asides in the SAC where they attempt to more clearly present their legal claims.  *See, e.g.,* SAC ¶¶ 49, 55.

Whereas this lists primarily what Plaintiffs removed from their prior pleading, the following sections describe the elements they added or highlighted with additional zeal.

A. Advertising

While the SAC contains many identical Defendant statements as the AC, Plaintiffs make clear in their opposition to Defendants' Motion to Dismiss that the specific Defendant statements regarding advertising revenue which they argue give rise to liability are as follows:

| STATEMENT | DOC/ DATE |
|---|---|
| Fubo is "*increasingly leveraging our data and analytics capabilities to optimize advertisements for both users and advertisers.*" Defendants emphasized that *"[o]ur ability to leverage our data to provide users with relevant ads and measure the effectiveness of these advertisements on our platform is also a key factor in the increased wallet share of advertising budget spent on our platform."* Compl. ¶¶37-38, 78. | 2019 Annual Report |
| Significant opportunity [] to *allow advertisers to access our audience by leveraging our technology, data, and measurability* to drive returns on advertising spend," so that Fubo's platform was "highly attractive to advertisers." Compl. ¶¶46, 47. | Registration Statement Oct. 7, 2020 |
| "We believe our premium content and industry-leading consumer experience uniquely position us to rapidly grow our advertising business." Compl. ¶48. | Registration Statement Oct. 7, 2020 |
| We expect margin improvement to continue over time, aided by a number of initiatives. This includes the growth of advertising on our platform . . . The growth of advertising on our platform . . . Compl. ¶¶52, 53. | Shareholder Letter November 10 |
| Fubo could "*leverage [its] proprietary data*" to drive "advertising sales" and "margin expansion." Compl. ¶54. | November 10, 2020, 3Q Earnings Call |

Opposition to Motion to Dismiss, ECF No. 54 at 10 (hereafter "Pl. Opp.") (alterations in original). Plaintiffs argue that Defendants' omission of the fact revealed in the Kerrisdale Report "that Fubo does not have any data or inventory that is differentiated" meaning that Fubo could not "provide the reach many advertisers crave" made the above statements materially misleading. Compl ¶ 75 (internal quotation marks omitted); *see also* Pl. Opp. at 11. Plaintiffs also argue that Confidential Witness #1 ("CW #1"), a former Project Manager at the Company who "had relevant

understanding and internal knowledge of Fubo's content provider contracts, tracking of user growth, and the onboarding of new channels" corroborated the Report's claims.  Compl. ¶26. Specifically, Plaintiffs state that CW #1 "attended meetings with senior executives of Fubo, including Ben Grad (Senior Vice President – Head of Content Strategy and Acquisition) and content provider [*sic*]" in which "Fubo admitted . . . that [they] don't have the ability to provide user data."  *Id.* at ¶ 77 (internal quotation marks omitted).  CW #1 was not employed at Fubo during the Class Period.

### B.  Sports-Betting

The specific Defendant statements which Plaintiffs argue misled investors with regards to the Company's planned entry into sports-betting through the acquisition of Balto Sports are as follows:

| STATEMENT | DOC/ DATE |
|---|---|
| "The tailwinds have never been stronger. Fubo is firmly *at the intersection of three mega trends*. The first is the secular decline of traditional television viewership. The second is the shift of TV ad dollars to connect the devices. And the third is online sports wagering *a market we absolutely intend to enter*." Compl. ¶56. | Earnings Call Nov. 10, 2020 |
| "Therefore, we are excited to announce that fuboTV intends to expand into the online sports wagering market. Our goal with wagering is to develop a new revenue stream for fuboTV, and one which we believe will be an important contributor to our business." Compl. ¶ 52. | Shareholder Letter Nov. 10, 2020 |
| Defendant Gandler represented that Fubo had "*already started executing on its [wagering] strategy*" and that the Company is "going to be able to also sell in a lot of wagering opportunities" given its "acquisitions advantage," "engagement advantage," and "monetization advantage." Compl. ¶ 57. | Earnings Call Nov. 10, 2020 |
| "We believe there are significant synergies between consumers who enjoy wagering and our subscribers who enjoy streaming live sports, creating a flywheel opportunity. *As we've previously expressed, one of our goals with wagering is to expand our total available market (TAM) by developing another important revenue stream for fuboTV, as we are doing with our growing ad sales business.*<br><br>The acquisition of Balto Sports will enable us to build a first class, free to play experience that brings consumers the best games around live sports. From | "fuboTV Acquires Balto Sports as First Step Into Online Sports Wagering Market," Press Release |

| | |
|---|---|
| there, we see a natural progression to layer on real money wagering in regulated markets complementing fuboTV's live streaming video for a highly engaging user experience within our platform. We will be strategic in our approach to wagering as we consider and evaluate different opportunities and will adjust our plans accordingly.<br><br>We're excited to launch sports wagering, integrate it into our core offerings and deliver what we believe will be a truly groundbreaking live TV streaming platform to consumers." Compl. ¶59. | Dec. 1, 2020 |
| Defendant Gandler promoted the move as "instrumental" expansion of Fubo's sports betting ambitions. Compl. ¶59. | "fuboTV Acquires Balto Sports as First Step Into Online Sports Wagering Market," Press Release<br><br>Dec. 1, 2020 |
| "And so we needed to make sure that this was a team that had a *very specific skill set* that we did not have, but yet was small enough that we can integrate into our larger group *and allow them to leverage the resources and the metadata mapping and things that we think are going to allow us to really build something compelling.*<br><br>And so the reason why Balto was because again, they are in the pick'ems game, they have had, over 30,000 players test the platform. They understand automation. We understand consumer journeys. We understand what we should be looking at from conversion funnels. And what this is going to allow us to do is launch a game at the end of the, I'll call it, first half of the year 2021. Don't hold me to it, but just say call it, June. These guys are going to be joining us, I think next week finally. So we're very excited about that. We've been planning." Compl. ¶ 61. | BMO Capital Markets 2020 Growth & ESG Conference<br><br>Dec. 9, 2020 |

Pl. Opp. at 12-13. Plaintiffs argue that Defendants' omission of the fact that Balto was an "inconsequential" player in the sports-betting space with only "3 employees, a failed test product, and . . . mothballed operations during the pandemic" which rendered it incapable of ushering the Company into the market "created the misimpression that the Company was actually executing on its foray into sport betting." *Id.* at 13 (quoting December 23 Lightshed Report). Plaintiffs also

cite the Kerrisdale Report's call out of "Gandler['s] tendency to exaggerate the positioning of his company and the opportunities ahead of it" as further support for their argument.  *Id.*

## LEGAL STANDARD

### I. Motion to Dismiss

When considering motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Complaint must "plausibly give rise to an entitlement for relief" and contain "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678-679 (citing *Twombly*, 550 U.S. at 556).  The Court's responsibility is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

Where the substantive legal claims include allegations of securities fraud, Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995's ("PSLRA") heightened pleading requirements are in effect.  Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud or mistake."  To survive under Rule 9(b), a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015).  To survive under the PSLRA, a complaint must "(1) specify each statement alleged to have been misleading [and] the reason or reasons why

the statement is misleading; and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (internal citation and quotation marks omitted) (quoting 15 U.S.C. § 78u-4(b)).

Alongside the pleadings, a Court may also consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" of which a court may take judicial notice. *Sgalambo v. McKenzie*, 739 F.Supp.2d 453, 470 (S.D.N.Y. 2010) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Additionally, when deciding a motion to dismiss, a court may "take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-25 (2d Cir. 2008); *see also Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 (2d Cir. 2022) (finding that a district court's judicial notice of an investment analyst report was appropriate because it was "relevant" to litigants' arguments on a motion to dismiss).

## II. Securities Fraud Claims

### A. Section 10(b)

Section 10(b) of the Securities Exchange Act of 1934 prohibits using or employing, "in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance." 15 U.S.C. § 78j(b). Under Rule 10b-5, promulgated thereunder, it is unlawful for any person, directly or indirectly, by the use of any means specified in Section 10(b):

> (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to

make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  To state a private civil claim under Section 10(b) and Rule 10b-5, a plaintiff must prove "'(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection with the purchase or sale of securities; (4) Plaintiff's reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *GAMCO Inv'rs, Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 217 (2d Cir. 2016) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)).  To maintain a Section 10(b) claim at the dismissal stage, the Complaint must establish that Defendants "made a statement that was misleading as to a material fact." *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 207 (S.D.N.Y. 2020) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011).  When claiming falsity, the alleged material misstatement must have been "false at the time it was made." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 55, 571 (S.D.N.Y. 2014), *aff'd*, 605 F. App'x 62 (2d Cir. 2015).  When claiming omission, the Complaint must establish that the defendant was under a duty to disclose information and failed to do so. *Id.*  To establish materiality, a Plaintiff must establish "whether the defendants' representations, taken together and in context, would have misled a reasonable investor." *Rombach v. Chang*, 355 F.3d 164, 172 n.11 (2d Cir. 2004) (citation and internal quotation marks omitted).

**B.  Section 20(a)**

Section 20(a) of the Exchange Act imposes liability on individuals who control any person or entity that violates Section 10. *See* 15 U.S.C. § 78t(a).  Section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any

person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

*Id*. To establish a Section 20(a) claim, Plaintiff must show "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

## DISCUSSION

As a preliminary matter, the Court takes judicial notice of the exhibits appended to Defendants' Motion to Dismiss. The majority of the exhibits, specifically those marked A-C, G, and I-K, are incorporated by reference in the SAC. *See* ECF No. 52-1 at 3. Despite Defendants' opposition to the noticing of Exhibits D, F, and H, the Court exercises its authority to do so pursuant to *Staehr* and *Ark. Pub. Emps. Ret. Sys.*'s permissive grant to District Courts to take notice of "the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents." *Staehr*, 547 F.3d at 424-425. Plaintiffs seek the inclusion of these contemporaneous analyst reports not for the truth of the matters asserted within them, but rather for "the fact of the publication of positive analyst coverage" during the relevant time period. The Court takes judicial notice of the publication of such statements in the press and does not consider them for the truth of the matters asserted within. The Court also takes judicial notice of Exhibit E, a copy of the Company's stock-price because "a district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000) (collecting cases); *see also Acticon AG v. China N. E. Petroleum Holdings, Ltd.*, 692 F.3d 34, 37 n.1 (2d Cir. 2012).

Defendants argue that Plaintiffs' claims must be dismissed because they: (i) constitute puzzle pleading, (ii) contain insufficient allegations of false or misleading statements, (iii) constitute non-actionable puffery, (iv) insufficiently plead scienter, (v) insufficiently plead loss causation, and (vi) fails to plead a Section 20(a) claim because it does not contain a primary violation.  The Court dismisses the SAC because Plaintiffs have not sufficiently pleaded a materially false or misleading statement under both their liability theories and have also insufficiently pleaded scienter under their sports-wagering theory.

I.  **Advertising**

Plaintiffs provide insufficient independent facts that establish the falsity of Defendants purportedly misleading statements.  This is the case because the Kerrisdale Report, which the SAC heavily relies upon, provides no independent facts regarding the Company's user data and advertising and because the Court once again does not consider CW #1's statements regarding Company practices outside of the Class Period.

As was the case when this Court dismissed the AC, the Kerrisdale Report states in its own terms that "all content in th[e] report represent the opinions of Kerrisdale." Kerrisdale Report, ECF No. 35-9 at 22.  As a matter of fact, the Report states clearly that its bearish views on the Company's advertising line of business are informed by the opinions of a single outsider employed at a "boutique media research advisory firm" not affiliated with Fubo. *Id.* at 3; *see also id.* at 18. Therefore, the Kerrisdale Report constitutes a non-actionable competing opinion of the Company's advertising capabilities.  *See* Motion to Dismiss, ECF No. 52 at 8-9.  Such public statements are insufficient to make out a securities fraud claim. *See C.D.T.S. No. 1 v. UBS AG*, 2013 U.S. Dist. LEXIS 175757, at *4 (S.D.N.Y. Dec. 13, 2013) (media reports "criticizing UBS's risk controls" did not support falsity); *Lipow v. Net 1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 170 (S.D.N.Y.

2015) (citation omitted) (company not required to "disclose what would have been pure speculation").

Plaintiffs attempt to bolster the contrary elements of the Kerrisdale Report by once again asking this Court to consider CW #1's allegations, despite its prior decision declining to do so. *In re FuBoTV Inc. Sec. Litig. v. Sec. Litig.*, No. 21-cv-01412 at 33-34, 39-40. In support of its argument, Plaintiffs cite to *Greco v. Qudian Inc.*'s statement that "allegations concerning activity in one period can support an inference of similar circumstances in a subsequent period." No. 1:20-CV-577-GHW, 2022 LEXIS 165369, at *13 (S.D.N.Y. Sept. 13, 2022) (citing *Employees' Ret. Sys. v. Blanford*, 794 F.3d 297, 307 (2d Cir. 2015)). At issue before the *Greco* Court was whether a confidential witness's allegations concerning a defendant's conduct could be credited despite the fact that the witness stopped working for the defendants months prior to the class period. *Id.* In deciding to credit the witness's allegations, the *Greco* Court relied heavily on the fact that the witness "directly assisted" a named Defendant, "communicated with him on a daily basis," and worked directly and substantially in the specific corporate unit implicated in the complaint's securities fraud claims. *Id.* at *35. Plaintiffs' additional claims that CW #1 attended meetings with executives not named in this suit and "remember[s] a lot of conversation about this" topic are insufficient amendments to unseat this Court's prior decision to not consider their allegations. SAC ¶ 76. Unlike in *Greco*, Plaintiffs make no argument that CW #1 had any contact with Defendants, and as in *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008), they make no substantive allegations as to these additional meetings' content, timing, or context. Therefore, this Court declines again to consider CW #1's comments.

Thus, Plaintiffs have failed to sufficiently plead that Defendants' statements were actionably false or misleading by omission under Rule 12(b)(6) and 9(b).

## II. Sports-Wagering

### A. Falsity

In their second theory of liability, Plaintiffs claim that Defendants' aforementioned statements regarding their entry into the sports-betting industry through their acquisition of Balto Sports were materially misleading because the Company lacked the ability to successfully enter that market. Plaintiffs rely on the Lightshed and Kerrisdale Reports which state that "Balto was inconsequential" and had insufficient operations to support the kind of sport betting business that Defendant Gandler appeared to claim the Company would use the acquisition to establish.

Several of Defendant Gandler's statements seem to suggest that the Company was planning on entering the sports-betting business through the acquisition. Contrary to Defendants' assertions, Defendant Gandler's statements, particularly those included in the December 1, 2020 press release, make clear reference to "Balto's gaming operator abilities." Motion to Dismiss, ECF No. 52 at 12. Defendant Gandler stated three weeks prior to the public announcement of the merger that the Company "absolutely intend[ed] to enter" into the sports-betting industry and that they believed the "expan[sion]" would "develop a new revenue stream." SAC ¶¶ 52, 56. In the announcement of the acquisition, Defendant Gandler, referring back to his pre-announcement statements, said that "[a]s we've previously expressed, one of our goals with wagering is to expand our total available market (TAM) by developing another important revenue stream for fuboTV." *Id.* at ¶ 59. Later remarking on the acquisition, Defendant Gandler stated that Balto "had a very specific skill set" which would "allow them to leverage the resources and metadata mapping and things that we think are going to allow us to really build something compelling."

Nevertheless, these statements do not sufficiently plead any contemporaneous particularized facts that support Plaintiffs' allegation that Balto could not have created a licensed

gaming operator. Plaintiff' reliance on the opinions presented in the Kerrisdale and Lightshed reports are insufficient. These reports "provide[] no basis on which a reader could possibly evaluate the reliability of their factual claim[s]." *Lopez v. CTPartners Executive Search Inc.*, 173 F. Supp. 3d 12, 32 n.8 (S.D.N.Y. 2016). They exclusively contain the "unadorned," *City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Ryanair Holdings PLC*, No. 18-CV-10330 (JPO), 2020 U.S. Dist. LEXIS 96020, at *19 (S.D.N.Y. June 1, 2020) opinions of purported market experts who believed that the Company's foray into "online sports betting . . . [was] immaterial." Kerrisdale Report, ECF No. 35-9 at 16. Plaintiffs' reliance on the analyst reports' claims surrounding the acquired entity's *prior* operations also do not plausibly establish that the company would be unable to aid Fubo in creating a licensed gaming operator in the *future*. What's more, the Company's decision to place the sports wagering business under "strategic review" *two years* after Defendant Gandler's statements also fails to establish contemporaneous falsity.

    **B. Scienter**

    Plaintiffs have also failed to plead scienter. "Under the securities laws, the requisite scienter is an intent to deceive, manipulate, or defraud." *City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Ryanair Holdings PLC*, No. 18-CV-10330 (JPO), 2020 U.S. Dist. LEXIS 96020, at *7 (S.D.N.Y. June 1, 2020) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (quotation marks omitted). Under Rule 9(b), "a plaintiff stating a claim under section 10(b) or Rule 10b-5 must raise a strong inference of scienter by alleging facts showing either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (quoting *ECA & Local 134*

*IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009)) (quotation marks omitted).

Plaintiffs advance several theories under which they claim the SAC sufficiently pleads scienter. Firstly, they argue that the SAC establishes scienter traditionally by showing that Defendants were aware of "the trivial nature of the Balto acquisition." Pl. Opp. at 21 (citations omitted). Yet, the specific sections of the SAC which Plaintiffs cite to make no plausible claim that Defendants acted with the requisite intent. At most, they refer once again to the Kerrisdale Report's opinions regarding Balto Sports' capabilities and, at worst, they simply restate Defendant Gandler's allegedly misleading statements.

Second, Defendants argue that the temporal proximity between Defendant Gandler's statements about the Balto acquisition and the publication of the Kerrisdale Report six weeks later is insufficient to establish the requisite intent. Such temporal proximity arguments have been successful in cases in which the misleading nature of a defendant's statements are established factually shortly after their declaration. *See, e.g.*, *In re Pareteum Sec. Litig.*, 2021 U.S. Dist. LEXIS 151106, at *48 (S.D.N.Y. Aug. 11, 2021) (holding that scienter was sufficiently pleaded where a Company's own significant financial restatement came only months after the purported misstatements); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 517 (S.D.N.Y. 2011) (finding temporal proximity where third parties independently established the falsity of defendant's claims after actual close review of company financial documentation); *Arnlund v. Deloitte & Touche LLP*, 199 F. Supp. 2d 461, 483 (E.D. Va. 2002) (crediting scienter by temporal proximity where a newly installed corporate officer discovered securities violations upon investigation within months of misrepresentations). The opinions

contained in the Kerrisdale Report are not at all like the manner of corrective disclosures which are sufficient to establish scienter under this theory as it contains no genuine facts.

Finally, Plaintiffs argue the SAC pleads scienter under the "core operations" theory. To succeed on this theory, a plaintiff must "plead that a defendant made false or misleading statements when contradictory facts of critical importance to the company either were apparent[] or should have been apparent." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489 (S.D.N.Y. 2004) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)). Even setting aside the prevailing view of this Court that such allegations can provide "supplemental support for allegations of scienter" but "cannot establish scienter independently," Plaintiffs' claim still fails because, once again, the SAC relies exclusively on the Kerrisdale Report for contradictory facts even though that report contains none. *New Orleans Emples. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 n.3 (2d Cir. 2011); *see also In re SuperCom Inc. Sec. Litig.*, 2018 U.S. Dist. LEXIS 175467, at *91 (S.D.N.Y. Oct. 10, 2018) (collecting cases).

In sum, none of Plaintiffs' allegations give rise to a strong inference of scienter.

### III.     Section 20(a)

Because Plaintiffs have failed to adequately allege the § 10(b) claim, the only predicate violation of the Exchange Act alleged here, their claim under § 20(a) fails as a matter of law. *See S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997) ("plaintiff must show a primary violation by the controlled person and control of the primary violator by the targeted defendant").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** without prejudice. The Clerk of the Court is respectfully directed to terminate the motion. ECF No. 33. Plaintiff's motion for leave to amend must be filed by April 11, 2024.

**SO ORDERED.**
**Dated:   March 28, 2024**
         **New York, New York**

                                              **ANDREW L. CARTER, JR.**
                                              **United States District Judge**